2 A.3d 368

**STATE of Maryland**

v.

**Larry Edward JOHNSON.**

**No. 140, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 23, 2010.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for Petitioner.

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, of Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

In 2007, Respondent, Larry Edward Johnson, filed in the Circuit Court for Wicomico County an application to obtain review by a three-judge panel of his mandatory minimum sentence of 25 years' incarceration, without the possibility of parole, resulting from his 1992 conviction by that court for daytime housebreaking. After reviewing Johnson's application, the sentence review panel determined, by order entered on 16 January 2008, that his sentence should remain unchanged. Johnson's application for leave to appeal the judgment of the panel was granted by the Court of Special Appeals. Johnson's appeal was premised on the grounds that the panel denied him his right to counsel during the sentence review proceedings and failed to comply with the Maryland Rules governing waiver of counsel. The intermediate appel-

late court agreed with Johnson, vacated the review panel's order, and remanded the case to the panel for a new hearing at which Johnson would be offered the opportunity to obtain representation. The State's petition for a writ of certiorari to this Court was successful. For reasons we shall explain, we hold that, because Johnson applied for in 2005 and received review in 2006 of his 1992 sentence, the subsequent review panel was without jurisdiction to consider Johnson's 2007 application for sentence review. Accordingly, the Court of Special Appeals's judgment shall be vacated and we shall remand the case to that court with directions to vacate the Circuit Court's relevant order and dismiss the appeal.

## FACTS

On 6 August 1992, Johnson pled guilty, in the Circuit Court for Wicomico County, to daytime housebreaking and was sentenced as a subsequent offender [1] to a mandatory minimum 25-year term of incarceration, without the possibility of parole, under then Maryland Code (1957, 1992 Repl. Vol.), Article 27, § 643B.[2] On 8 September 1992, Johnson filed an

---

1. The record reflects that Johnson was convicted previously of certain predicate crimes which gave rise to the imposition of the mandatory 25-year, non-parolable, sentence, including daytime housebreaking in Anne Arundel County in 1980, burglary in Baltimore County in 1988, and armed robbery in Baltimore City in 1987.

2. At the time of Johnson's guilty plea and sentencing in 1992, Former Article 27, § 643B, entitled "Mandatory sentences for crimes of violence," provided in pertinent part:

   (a) "Crime of violence."—As used in this section, the term "crime of violence" means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; assault with intent to rape; assault with intent to rob; assault with intent to commit a sexual

application for leave to appeal his guilty plea, which was denied by the Court of Special Appeals on 13 January 1993.

Following two unsuccessful petitions for post-conviction relief, filed in the Circuit Court on 10 December 1992 and 25 September 2000, respectively, Johnson filed in proper person in the Circuit Court, on 28 October 2005, an application for review of his sentence by a three-judge panel. As authority for his right to file this application, Johnson relied on expressly the General Assembly's passage of House Bill 596 of the 2005 legislative session, where the Legislature amended § 8–102 of the Criminal Procedure Article to permit "a person who is serving a term of confinement for burglary or daytime housebreaking that includes a mandatory minimum sentence imposed before October 1, 1994, [to] apply for and receive one review of the mandatory minimum sentence. . . ." *See* 2005 Md. Laws 1800–01. Under that enactment, the sentence review panel reviewing the application was allowed to "strike the restriction against parole, but . . . not reduce the length of the sentence." *Id.* at 1801. Any such applications for review were required to be filed on or before 30 September 2006. *Id.* On 7 June 2006, the sentence review panel entered an order leaving Johnson's sentence unchanged.

On 10 December 2007, Johnson filed, again in proper person, in the Circuit Court a second application for sentence

---

offense in the first degree; and assault with intent to commit a sexual offense in the second degree. . . .

\* \* \*

(c) Third conviction of crime of violence.—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

Md.Code, Former Art. 27, § 643B.

review by a three-judge panel (the application at issue in the present case), this time relying expressly on the General Assembly's passage of House Bill 1317 in the 2007 legislative session, which again amended § 8–102 to permit "a person who is serving a mandatory minimum sentence of confinement imposed under former Article 27, § 643B of the Code before October 1, 1994, where burglary or daytime housebreaking was a predicate offense for the imposition of the mandatory minimum sentence, [to] apply for and receive one review of the mandatory minimum sentence...." *See* 2007 Md. Laws 4058–60. This enactment, like its 2005 predecessor, granted the review panel only the ability to strike the restriction against parole (not to reduce the length of the sentence) and required that all such applications for review be filed on or before 30 September 2008. *Id.* at 4060.

On 13 December 2007, the administrative judge of the Circuit Court wrote Johnson advising him that a sentence review panel was designated and stating that Johnson had fifteen days to submit in writing "any information ... independent of that contained in" the application for sentence review that Johnson wished for the panel to consider. The same letter was sent to the State's Attorney for Wicomico County and the local Office of the Public Defender. On 20 December 2007, 10 days after filing his second application and 20 days before the review panel was to reach a decision, Johnson wrote to the panel and the Public Defender, stating:

> I would like to ask this panel [to] defer any ruling in this matter until I have had ample time to confer with court appointed counsel, so that Mr. James P. Murray,[3] can provide the best representation possible in this matter after having conducted a thorough investigation and assessment, I believe that this case can be presented more effectively by able counsel, and that the courts [sic] decision to appoint counsel should amount to more than a procedure.

---

**3.** It appears from the record that, at the time of Johnson's application, James P. Murray, Esq., was the District Public Defender for the district that includes Wicomico County.

No other information was presented to the review panel for its consideration.

On 16 January 2008, the sentence review panel, after considering Johnson's application and without holding a hearing,[4] entered an order determining again that Johnson's sentence should remain unchanged.

Johnson filed timely, on 7 February 2008, an application for leave to appeal to the Court of Special Appeals from the second sentence review panel's order. Bulwarked now by the appearance of assigned counsel from the State Public Defender's Appeals Division, Johnson argued in his brief that the review panel denied him his right to counsel and that the panel failed to comply with the mandatory requirements of Maryland Rule 4–215 governing waiver of counsel. In response, the State argued that the order of the sentence review panel was not an appealable judgment because the panel did not increase Johnson's sentence, and that, even if it were an appealable judgment, Johnson's right to counsel was not abridged. In a reported opinion filed on 28 August 2009, the Court of Special Appeals, relying heavily on its opinion in *Rendelman v. State*, 73 Md.App. 329, 533 A.2d 1339 (1987), held that the 16 January 2008 order issued by the review panel in Johnson's case was appealable because his claim of error was based on the panel's alleged denial of his right to counsel, rather than the decision of the panel to leave his sentence unchanged. Turning to the merits of Johnson's claim, the intermediate appellate court found that Johnson was entitled to counsel throughout the sentence review process, and that, because Johnson had not been provided counsel and had not waived expressly his right to counsel, the sentence review panel was required to comply with Rule 4–215 prior to ruling on Johnson's application. Because, in its view, the panel failed to comply with the mandates of Rule 4–215,

---

4. The sentence review panel was authorized to rule on Johnson's application in this fashion by Maryland Rule 4–344(e) (2008) and Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article § 8–105.

the intermediate appellate court vacated the review panel's order and remanded the case for further proceedings, wherein Johnson would be provided the opportunity to secure private counsel or receive representation by the Public Defender.

■■ On 9 December 2009, we granted the State's petition for a writ of certiorari, 411 Md. 599, 984 A.2d 243 (2009), to consider potentially the following issues, as framed by the State in its petition:

(1) Is a denial of a sentence review that does not deprive the applicant of a fundamental right to counsel, not appealable?

(2) After Johnson filed his *pro se* review application, which triggered the automatic statutory and rule requirement that the review panel respond within 30 days, was the review panel under no obligation to ensure Johnson's legal representation or that he knowingly and intelligently waived legal representation for the preparation of the application?

Although not contained in its petition for writ of certiorari, the State advanced, in its brief and during oral argument, an additional contention, namely, that the judgment of the Court of Special Appeals must be reversed on the ground that the Circuit Court was without jurisdiction to consider Johnson's 2007 application for sentence review because Johnson applied for in 2005 and received review in 2006 of his sentence under House Bill 596 of the 2005 legislative session.[5]

---

5. Because the State's assertion in this regard is a jurisdictional question, it was not waived as the result of the State's failure to raise it previously and, therefore, properly is before this Court. *See* Md. Rule 8–131(a) (2010) ("The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court."). *See also Lane v. State,* 348 Md. 272, 278, 703 A.2d 180, 183 (1997) ("[A] challenge to the trial court's subject matter jurisdiction may be raised on appeal even if not raised in or decided by the trial court. This exception to the general rule of preservation is based on the premise that a judgment entered on a matter over which the court had no subject matter jurisdiction is a nullity and, when the jurisdictional deficiency comes to light in either an appeal or a collateral attack on the judgment, ought to be declared

## PERTINENT PRINCIPLES OF SOUND
## STATUTORY INTERPRETATION

In *Lockshin v. Semsker*, 412 Md. 257, 987 A.2d 18 (2010), we recounted the oft-repeated principles of sound statutory interpretation, observing:

The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize

---

so."); *State v. McCray,* 267 Md. 111, 126, 297 A.2d 265, 273 (1972) ("[A] question of the jurisdiction of the lower court, even though not tried and decided below and neither briefed nor argued, may be raised by the Court, *sua sponte,* as an exception to the general rule established by Maryland Rule [8–131(a) ]."). In any event, we would have noticed the jurisdictional issue on our initiative, had not the State raised it.

the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Id.* at 274–77, 987 A.2d at 28–29 (internal citations omitted). With these principles arrayed before us, we approach the statutory basis underlying Johnson's alleged right to obtain a review of his sentence by the three-judge panel in 2007–08, the resolution of which we find to be dispositive of this case.

## *ANALYSIS*

■ At the time the Circuit Court sentenced Johnson to a mandatory minimum 25-year term of incarceration in 1992, a defendant's right in a criminal case to obtain a review of his or her sentence by a three-judge panel of trial judges was governed by then Maryland Code (1957, 1992 Repl. Vol.), Article 27, § 645JA. At that time, § 645JA, entitled "Right to review of sentence," provided, in pertinent part:

(a) *Unless no different sentence could have been imposed* or unless the sentence was imposed by more than one trial judge, every person convicted of a crime by any trial court of this State and sentenced to serve, with or without suspension, a total of more than two years imprisonment in any penal or correctional institution in this State shall be enti-

tled to have the sentence reviewed by a panel of three or more trial judges of the judicial circuit in which the sentencing court is located. However, a person has no right to have any sentence reviewed more than once pursuant to this section. Notwithstanding any rule of the Court of Appeals to the contrary, the judge who sentenced the convicted person shall not be one of the members of the panel, but if he so desires he may sit with the panel in an advisory capacity only.

Md.Code, Former Art. 27, § 645JA (emphasis added). Because Johnson's sentence was a mandatory minimum sentence, he was not entitled to seek review by a three-judge panel under § 645JA.

In 1994, the General Assembly enacted Senate Bill 322, which amended Former Article 27, § 643B, to remove daytime housebreaking from the list of "crimes of violence" subject to mandatory minimum penalties. *See* 1994 Md. Laws 3158–59. Nevertheless, the amendment did not apply retrospectively; therefore, because Johnson's sentence was considered still a mandatory minimum sentence, he remained barred from filing for sentence review under § 645JA, even though, had he been convicted of the identical crime after the effective date of the 1994 amendment, he would have been entitled to sentence review.

In addition to the amendment to § 643B removing daytime housebreaking from the list of "crimes of violence" subject to mandatory minimum penalties, in 1999, the General Assembly amended § 645JA to remove those individuals serving a mandatory minimum sentence from the list of persons who could not seek a review of their sentence by a three-judge panel. *See* 1999 Md. Laws 3567–68. Again, however, this amendment did not include a provision which would have permitted persons serving a mandatory minimum sentence imposed prior to the 1999 amendment (such as Johnson) to seek a sentence review by a three-judge panel under § 645JA. The Court of Special Appeals, in *Cox v. State*, 134 Md.App. 465, 760 A.2d 290 (2000), noted this state of affairs, holding that the defendant, who was serving a mandatory sentence for daytime

housebreaking, could not seek review of his sentence under § 645JA because he had been sentenced prior to the effective date of the statute allowing review of mandatory sentences, which contained no statement of retrospective application. *Id.* at 469–71, 760 A.2d at 292–94.

In 2001, § 645JA was recodified as Maryland Code, Criminal Procedure Article § 8–102. That section, entitled "Right to sentence review," provides, in pertinent part:

(a) Persons entitled to review.—Except as provided in subsection (b) of this section, a person convicted of a crime by a circuit court and sentenced to serve a sentence that exceeds 2 years in a correctional facility is entitled to a single sentence review by a review panel.

Md.Code (2001, 2008 Repl. Vol.), Crim. Proc. § 8–102(a).[6] As with the 1999 amendments to § 645JA, the recodified version of § 8–102 did not contain any expression of retrospective application that would have given persons (such as Johnson) the right to a review of their mandatory minimum sentence by a three-judge panel.

Finally, in 2005, the General Assembly enacted House Bill 596, which reenacted § 8–102 without change, providing for individuals such as Johnson to obtain sentence review. Specifically, House Bill 596, entitled "AN ACT concerning Burglary and Daytime Housebreaking—Mandatory Sentences—Retroactive Effect," provided in pertinent part:

SECTION 2. AND BE IT FURTHER ENACTED, That, notwithstanding any other law to the contrary, a person who is serving a term of confinement for burglary or daytime housebreaking that includes a mandatory minimum sentence imposed before October 1, 1994, may apply for and receive one review of the mandatory minimum sentence as provided in § 8–102 of the Criminal Procedure Article. The review panel may strike the restriction against parole, but may not reduce the length of the sentence. Such an appli-

---

**6.** The present language of § 8–102(a) is identical to the version of § 8–102(a) recodified in 2001.

cation for review shall be filed on or before September 30, 2006.

2005 Md. Laws 1800–01. Thus, under House Bill 596, Johnson, and other individuals similarly situated, were granted the right to a one-time review of their sentence by a three-judge panel, a right which, until 2005, had been denied to them as the result of the lack of retrospective application of the amendments to §§ 643B and 645JA. As noted *supra*, Johnson took advantage of this provision by filing his 2005 application for sentence review, upon consideration of which the three-judge review panel declined in 2006 to alter his sentence.

In 2007, the General Assembly enacted House Bill 1317, which again reenacted § 8–102, without change, and granted certain incarcerated individuals the right to obtain sentence review. Specifically, House Bill 1317, entitled "AN ACT concerning Mandatory Minimum Sentences—Burglary and Daytime Housebreaking—Retroactive Effect," provided in pertinent part:

SECTION 2. AND BE IT FURTHER ENACTED, That, notwithstanding any other law to the contrary, a person who is serving a mandatory minimum sentence of confinement imposed under former Article 27, § 643B of the Code before October 1, 1994, where burglary or daytime housebreaking was a predicate offense for the imposition of the mandatory minimum sentence, may apply for and receive one review of the mandatory minimum sentence as provided in § 8–102 of the Criminal Procedure Article. The review panel may strike the restriction against parole, but may not reduce the length of the sentence. An application for review under this section shall be filed on or before September 30, 2008.

2007 Md. Laws 4058–60. Johnson filed his 2007 application for sentence review, his second such application, under this provision. The State contends that Johnson was not entitled to file this second application for sentence review, arguing that House Bill 1317 sought merely to expand the group of individuals granted the right to obtain a single sentence review, rather than providing individuals who already received a

sentence review, pursuant to House Bill 596, with an additional opportunity to have their sentence reviewed. In response, Johnson asserts that House Bill 1317 does not bar explicitly or implicitly a person who received previously a review of his or her sentence under House Bill 596–2005 from obtaining additional review under House Bill 1317–2007. We agree with the State.

Section 8–102(a) of the Criminal Procedure Article, the provision governing specifically the right to sentence review, is clear on its face. It provides that "a person convicted of a crime by a circuit court and sentenced to serve a sentence that exceeds 2 years in a correctional facility is entitled to *a single sentence review by a review panel.*" Md.Code, Crim. Proc. § 8–102(a) (emphasis added). Similarly, the pertinent text of House Bill 596 and House Bill 1317 each state that the incarcerated individual "may apply for and receive *one review of the mandatory minimum sentence.*" (Emphasis added). It is obvious that the purpose of both bills was to provide an enlarging group of certain individuals the opportunity to seek a single review of their sentence, an opportunity which, perhaps unfairly, did not exist for them prior to 2005. Neither bill expanded the one-review limitation contained in § 8–102(a). Thus, the plain language of § 8–102(a), and House Bills 596 and 1317, suggests that the review panel in the present case was without jurisdiction to consider Johnson's 2007 application, as he had received review already of his sentence in 2005–06 under House Bill 596.

The legislative history of House Bill 1317, the provision under which Johnson filed the present application, supports clearly this conclusion. *See Lockshin,* 412 Md. at 279, 987 A.2d at 31 ("For the sake of completeness, 'we may resort to legislative history to ensure that our plain language interpretation is correct.'" (quoting *Bd. of Educ. v. Zimmer–Rubert,* 409 Md. 200, 214, 973 A.2d 233, 241 (2009))); *Shenker v. Laureate Educ., Inc.,* 411 Md. 317, 349, 983 A.2d 408, 426 (2009) (reviewing legislative history "[f]or the sake of testing the validity of our construction" in the context of statutory interpretation). For example, the Revised Fiscal and Policy

Note accompanying House Bill 1317, prepared by staff of the General Assembly, provides the following summary of the legislation:

This bill allows a person serving a mandatory minimum sentence of confinement imposed before October 1, 1994 (under then applicable criminal law provisions) where burglary or daytime housebreaking was a predicate offense for the imposition of the mandatory minimum sentence, to apply for and receive *one review of the mandatory minimum sentence.* A review panel is authorized to strike the restriction against parole, but not reduce the length of the sentence. An application for review under this provision must be filed by September 30, 2008.

Revised Fiscal and Policy Note, H.B. 1317 (2007) (emphasis added). The "Current Law" section of the Note observes similarly that, "[u]nder § 8–102 of the Criminal Procedure Article, a person convicted of a crime by a circuit court and sentenced to serve a sentence that exceeds two years in a correctional facility is entitled to *a single review by a review panel." Id.* (emphasis added). In addition, the Note describes the rationale underlying passage of House Bill 1317, namely, to permit a single sentence review for those individuals excluded from sentence review under House Bill 596 solely because daytime housebreaking was their first or second offense, rather than their "third strike," and the limited nature of the grant of review, stating:

In 1994, the General Assembly removed burglary and daytime housebreaking from the list of violent crimes for which mandatory minimum sentences apply to repeat offenders. [House Bill 596] of 2005 allowed a person serving a term of confinement for burglary or daytime housebreaking that includes a mandatory minimum sentence imposed before October 1, 1994 to apply for and receive one review of the mandatory minimum sentence. The panel was allowed to strike the restriction against parole, but could not reduce the length of the sentence. An application for review under [House Bill 596] had to be filed on or before September 30, 2006. The Act took effect October 1, 2005

and terminated September 30, 2006. *However, there are about 40 persons who are still serving a mandatory minimum sentence from that period for which either the first or second offense, but not the third, was burglary or daytime housebreaking and is, thereby, not eligible for the review under [House Bill 596] (now terminated).*

*It was an unintended consequence of [House Bill 596] that only defendants whose last conviction, which directly triggered the applicability of the mandatory minimum sentence, was burglary or daytime housebreaking were allowed to seek a sentence review. Accordingly, this bill is considered a corrective action.*

*Id.* (emphasis added). Thus, it is clear that the intent of House Bill 1317 was to remedy the inequity caused by the distinction inadvertently drawn between prisoners whose first or second "strikes" were burglary or daytime housebreaking (who were without the right to sentence review under House Bill 596) and those for whom such crimes constituted their third "strike" (to whom House Bill 596 granted the right to a single sentence review).[7] It is illogical and contrary to the Legislature's stated intent to believe that the General Assembly meant, as part of its limited "corrective action," to grant

---

7. This reading of House Bill 1317 is confirmed by a document drafted by the State Office of the Public Defender and submitted in support of passage of the bill. The document, entitled "Position on Proposed Legislation," provides in pertinent part:

    HB 1317 seeks to permit a very small number on [sic] inmates sentenced pursuant to a repealed sentencing scheme to *apply* for a review of their sentences. These inmates were sentenced pursuant to the "three strikes law." Under the previous sentencing scheme, one of the "three strikes" could have been the crime of daytime house breaking. At the request of the executive branch, the "three strikes" sentencing scheme was changed so that daytime house breaking was no longer a predicate offense for sentencing under the "three strikes" law. Subsequently, the General Assembly permitted those that were sentenced under the abrogated scheme to apply for review of their sentence. *Unfortunately, this relief was construed by the courts to only apply to those inmates whose third "strike" was daytime housebreaking. Accordingly, inmates whose first or second "strike" was daytime house breaking were not afforded the right to apply for a review of their sentence. HB 1317 seeks to remedy this inequity.*

multiple sentence reviews to certain inmates, such as Johnson, solely because daytime housebreaking was their first and/or second "strike" *and* their third "strike."

Bolstering our conclusion that individuals who obtained sentence review pursuant to House Bill 596 are not entitled to an additional sentence review under House Bill 1317 are materials from the legislative history of House Bill 596. For example, the Revised Fiscal Policy Note accompanying House Bill 596 states that the bill "allows a person serving a term of confinement for burglary or daytime housebreaking that includes a mandatory minimum sentence imposed before October 1, 1994 to apply for and receive *one review of the mandatory minimum sentence.*" Revised Fiscal Policy Note, H.B. 596 (2005) (emphasis added). The "Current Law" portion of the Note provides similarly that *"[a] person has no right to have a sentence reviewed more than once."* *Id.* In addition, in her testimony before the House Judiciary Committee on 23 February 2005, Delegate Salima Marriott, one of the sponsors of House Bill 596, described the proposed legislation's effect as "allow[ing] a small number of individuals serving a mandatory minimum sentence imposed before October 1, 1994 for daytime housebreaking to receive *one review of their mandatory minimum sentence.*" Finally, the testimony of Thomas E. Perez, then an Assistant Professor of Law at the University of Maryland School of Law, in support of the bill reflects his similar assessment of the legislation:

This bill is very limited. Nobody gets released if you pass this bill. Rather, this bill simply gives them a narrow one year window to make their *one—and only one—petition* to a three judge panel to reduce the sentence from 25 years without parole to 25 years with parole.

It is clear in the extreme from the legislative history of House Bill 596 that the General Assembly intended that individuals granted the right to sentence review under the legislation's provisions would have but one opportunity to seek review of their sentence by a three-judge panel.

We hold that incarcerated individuals who were granted the right to obtain, and in fact did obtain, review of their mandatory minimum sentence by a three-judge panel under House Bill 596 of the 2005 legislative session are barred from receiving additional review of their sentence under House Bill 1317. As noted *supra*, Johnson sought and received review of his mandatory minimum sentence in 2005–06, pursuant to the provisions of House Bill 596. Therefore, Johnson was not entitled to an additional sentence review in 2007–08 pursuant to House Bill 1317, and the three-judge sentence review panel in the present case was without jurisdiction to consider his 2007 application.[8] We shall vacate the judgment of the Court of Special Appeals and remand this case to that court with directions to vacate the order of the Circuit Court for Wicomico County, filed on 18 January 2008, and to dismiss the appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE SENTENCE REVIEW PANEL AND DISMISS THE APPEAL; COSTS TO BE PAID BY RESPONDENT.**

---

[8]. Because of the nature of our holding, namely, that the sentence review panel in the present case lacked jurisdiction to consider Johnson's 2007 application, we need not address the additional issues posed by the parties regarding the appealability of the review panel's order and Johnson's right to counsel during the sentence review proceedings.