43 A.3d 347

**Sheriff Darren M. POPKIN**

v.

**Deputy Erick GINDLESPERGER.**

**No. 104, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 26, 2012.

**2**

Steven M. Sullivan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and Roger L. Wolfe, Jr., Asst. Atty. Gen., Baltimore, MD), on brief, for appellant.

Carey Butsavage (Butsavage & Associates, P.C., Washington, DC), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

We have been asked to interpret Section 3–107(d) of the Public Safety Article, Maryland Code (2003, 2011 Repl.Vol.),[1] a provision included in the Law Enforcement Officers' Bill of Rights ("LEOBR"), to determine whether a deputy sheriff can compel, by the issuance of a subpoena, the production of documents and records in advance of a disciplinary hearing. In this case, Deputy Erick Gindlesperger of the Montgomery County Sheriff's Office had filed a subpoena request seeking to compel Sheriff Darren M. Popkin[2] to produce documents

---

1. Section 3–107(d)(1) of the Public Safety Article, Maryland Code (2003, 2011 Repl.Vol.) provides:

 (d) *Subpoenas.*—(1) In connection with a disciplinary hearing, the chief or hearing board may issue subpoenas to compel the attendance and testimony of witnesses and the production of books, papers, records, and documents as relevant or necessary.

 All statutory references in this opinion are to the Law Enforcement Officers' Bill of Rights ("LEOBR"), Sections 3–101 to 3–113 of the Public Safety Article, Maryland Code (2003, 2011 Repl.Vol.), unless stated otherwise.

2. Sheriff Raymond Kight was the Sheriff in Montgomery County at the time Deputy Gindlesperger submitted the subpoena request at issue in

prior to a disciplinary hearing under the LEOBR. The hearing board denied the request, and Deputy Gindlesperger filed a Motion for Show Cause Order in the Circuit Court for Montgomery County.[3] The Circuit Court determined that Section 3–107(d)(1) entitled Deputy Gindlesperger to pre-hearing production of various enumerated documents. Sheriff Popkin appealed and, on our own motion, we granted certiorari to consider the following question:

> Did the Circuit Court commit reversible error when it ordered the pre-LEOBR Hearing production of unrelated internal affairs case files pursuant to § 3–107(d)(1) of the Public Safety Article, which only authorizes subpoenas for the production of records at LEOBR hearings?

We shall hold that Section 3–107(d)(1) does not provide for compelling production of records and documents by subpoena in advance of an LEOBR disciplinary hearing and shall, therefore, reverse the Circuit Court's Order.[4]

**Background**

The LEOBR was originally enacted in 1974 "to guarantee that certain procedural safeguards be offered to police officers

---

this case. His successor, Darren M. Popkin, who was elected Sheriff in November 2010, is now the Appellant.

3. Section 3–105 provides that a law enforcement officer under investigation may apply for a show cause order when denied an LEOBR right:
 (a) *In general.*—A law enforcement officer who is denied a right granted by this subtitle may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted.
 (b) *Conditions.*—The law enforcement officer may apply for the show cause order:
 (1) either individually or through the law enforcement officer's certified or recognized employee organization; and
 (2) at any time prior to the beginning of a hearing by the hearing board.

4. Counsel for both parties seek to have us reach the merits of Deputy Gindlesperger's subpoena requests. Our holding, however, is limited to the question presented, and we, therefore, decline to address whether the documents requested may be produced at the time any hearing, which may be held, occurs.

during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal." *Blondell v. Baltimore City Police Department,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996), quoting *Abbott v. Administrative Hearing Board,* 33 Md.App. 681, 682, 366 A.2d 756, 757 (1976). A deputy sheriff in the Montgomery County Sheriff's Office, as is Deputy Gindlesperger, as one who is authorized to make arrests, is covered by the LEOBR. Section 3–101(e).[5]

The procedural safeguards, in the context of a summary punishment,[6] are initiated once the law enforcement officer decides to refuse discipline imposed summarily. Upon the

5. Section 3–101 provides, in pertinent part:
 (e) *Law enforcement officer.*—(1) "Law enforcement officer" means an individual who:
 (i) in an official capacity is authorized by law to make arrests; and
 (ii) is a member of one of the following law enforcement agencies:
 * * *
 7. The office of the sheriff of a county[.]

6. Summary punishment under the LEOBR is authorized under Section 3–111, which provides:
 (a) *Authorized.*—This subtitle does not prohibit summary punishment by higher ranking law enforcement officers as designated by the chief.
 (b) *Imposition.*—(1) Summary punishment may be imposed for minor violations of law enforcement agency rules and regulations if:
 (i) the facts that constitute the minor violation are not in dispute;
 (ii) the law enforcement officer waives the hearing provided under this subtitle; and
 (iii) the law enforcement officer accepts the punishment imposed by the highest ranking law enforcement officer, or individual acting in that capacity, of the unit to which the law enforcement officer is attached.
 (2) Summary punishment imposed under this subsection may not exceed suspension of 3 days without pay or a fine of $150.
 (c) *Refusal.*—(1) If a law enforcement officer is offered summary punishment in accordance with subsection (b) of this section and refuses:
 (i) the chief may convene a hearing board of one or more members; and
 (ii) the hearing board has only the authority to recommend the sanctions provided in this section for summary punishment.
 (2) If a single member hearing board is convened:
 (i) the member need not be of the same rank as the law enforcement officer; but
 (ii) all other provisions of this subtitle apply.

officer's refusal of discipline, the head of the law enforcement agency may convene a hearing and select the hearing board, which may be comprised of one or more officers. Section 3–111(c)(1).

The hearing board issues subpoenas, takes judicial notice of facts, administers oaths and provides the law enforcement agency and the officer "ample opportunity to present evidence and argument about the issues involved." Sections 3–107(d), (e), (g), (h). The hearing board makes findings as to the officer's culpability and, if it finds that the officer is not guilty, the administrative action and the summary discipline are terminated. *See* Section 3–108(a)(3). Alternatively, if the hearing board finds the officer guilty, then the hearing board may recommend a penalty, which, in the context of a hearing following a summary punishment refusal, may be no greater than a three-day suspension without pay or a fine of $150. Section 3–111(c)(1)(ii). The head of the law enforcement agency has the ultimate authority as to sanction, however. Section 3–108(d)(3).

**Factual and Procedural History**

In this case, Deputy Erick Gindlesperger was charged with violating Section 33–5(h) of the Montgomery County Personnel Regulations,[7] for "negligently and carelessly releas[ing] from custody" an inmate in April of 2010:

As a result of an Internal Investigation the following administrative violation has been *sustained* against you: *Charge # 1: Negligent or Careless in Performing Duties*

Source: Montgomery County Personnel Regulations 2001
Section: 33–5 Causes for Disciplinary Actions

---

7. Section 33–5(h) of the Montgomery County Personnel Regulations provides:

33–5. Causes for disciplinary action. The following, while not all-inclusive, may be cause for a disciplinary action by a department director against an employee who:

\* \* \*

(h) is negligent or careless in performing duties[.]
Code of Montgomery County Regulations § 33.07.01.33 (2008).

6

Number: (h) p. 217

On April 13, 2010, while on duty, DSIII Eric Gindlesperger was negligent and careless in performing his official duties as a deputy sheriff.

*To Wit:*

On April 13, 2010, DSIII Eric Gindlesperger negligently and carelessly released from custody Calvin Miller, an inmate committed to the Montgomery County Department of Correction and Rehabilitation, from the District Court of Maryland, in Rockville, MD.

As a result of this violation, the following *Disciplinary Action* is being taken:

*Summary Punishment:*

*Charge # 1:* Negligent or Careless in Performing Duties Sustained—2 days suspension without pay

Deputy Gindlesperger refused the summary punishment, disputed the charge and requested an LEOBR hearing, which was initially scheduled for July of 2010.

In June of 2010, Deputy Gindlesperger submitted three subpoenas to Sheriff Raymond Kight. The first two subpoenas sought the attendance and testimony of two witnesses; they are not in issue in this case. The third request sought the production of various documents before the hearing, which was opposed by Sheriff Kight on the basis that Section 3–107(d)(1) of the LEOBR did not authorize compelling production of documents before the hearing. Before any formal determination by the hearing board as to whether to issue the subpoena, Deputy Gindlesperger filed a Petition for Show Cause Order & Motion For A Stay Of Proceedings Before The Montgomery County Sheriff's Office in the Circuit Court for Montgomery County; the Circuit Court denied the Motion to Show Cause without prejudice but granted the motion to stay proceedings in order "to allow the Hearing Officer an opportunity to rule on Petitioner's requests for subpoenas."

Deputy Gindlesperger then requested that the hearing board issue a subpoena to the Montgomery County Sheriff's Office for the following documents: [8]

1. DS III Erick R. Gindlesperger's personnel file, including documents describing his seniority level, disciplinary record, training record, responsibilities, and any commendations received during the course of his employment.

2. All documents that are related to [officer]'s mistaken release of an inmate, including but not limited to: incident reports; other documents describing the actions the employee took; documents describing the circumstances of the mistaken release; notice of the charge against the officer and issues involved; investigative reports; and recommended charges, discipline or punishment reports; and documents describing the employee's seniority level, disciplinary record (for any misconduct or policy violation), training record and responsibilities.

3. All documents that are related to [officer]'s mistaken release of an inmate, including but not limited to: incident reports; other documents describing the actions the employee took; documents describing the circumstances of the mistaken release; notice of the charge against the officer and issues involved; investigative reports; and recommended charges, discipline or punishment reports; and documents describing the employee's seniority level, disciplinary record (for any misconduct or policy violation), training record and responsibilities.

4. All documents that are related to [officer]'s mistaken release of an inmate on or about April 12, 2010, including but not limited to: incident reports; other documents describing the actions the employee took; documents describing the circumstances of the mistaken release; notice of the charge against the officer and issues involved; investigative reports; and recommended charges, discipline or punishment reports; and documents describing the employee's

---

8. All of the Instruction and Definitions Sections of the revised subpoena request have not been reproduced for the sake of brevity.

seniority level, disciplinary record (for any misconduct or policy violation), training record and responsibilities.

5. All documents that are related to [officer]'s mistaken release of an inmate, including but not limited to: incident reports; other documents describing the actions the employee took; documents describing the circumstances of the mistaken release; notice of the charge against the officer and issues involved; investigative reports; and recommended charges, discipline or punishment reports; and documents describing the employee's seniority level, disciplinary record (for any misconduct or policy violation), training record and responsibilities.

6. All documents related to the accidental release of an inmate for the time period covered by this subpoena, including but not limited to: incident reports; other documents describing the actions the employee took; documents describing the circumstances of the mistaken release; notice of the charge against the officer and issues involved; investigative reports; and recommended charges, discipline or punishment reports; and documents describing the employee's seniority level, disciplinary record (for any misconduct or policy violation), training record and responsibilities.

7. All documents describing the types of conduct the Montgomery County Sheriff's Office deems "negligent" or "careless" in effect at the time Deputy Gindlesperger was charged with negligence/carelessness as a result of the April 13th incident.

8. All documents detailing policies for issuing punishment in Negligence/Carelessness cases in effect at the time Deputy Gindlesperger was charged with negligence/carelessness as a result of the April 13th incident.

9. All documents detailing policies for the recommendation of a two-day suspension in effect at the time Deputy Gindlesperger was charged with negligence/carelessness as a result of the April 13th incident.

The Instructions Section provided that "[u]nless otherwise stated, each item in this subpoena covers the period from

**January 1, 2005, to the date of the hearing.**" (emphasis in the original).

Sheriff Kight did not object to the production of Deputy Gindlesperger's personnel file in item 1 and asserted that he was unaware of the existence of any records related to items 4, 5, 7, 8, and 9; none of these requests is in issue before us. Sheriff Kight, however, opposed the production of documents pertaining to items 2 and 6, one relating to the "mistaken release of an inmate" by a particular officer and the other seeking all records relating to the "accidental release of an inmate" since January 2005, respectively, because compelled production of these documents before the hearing was not authorized under Section 3–107(d) and the records requested were not "discoverable, relevant or material." The hearing board denied the subpoena request:

This subpoena has been **denied:**

In accordance with § 3–107(d) I have considered the sub-poenas but decline to issue at this time, I am denying due to confidentiality, relevance, and necessity.

(emphasis in original).

Deputy Gindlesperger then filed another Motion for a Show Cause Order & Stay of Proceedings and Request for a Hearing in the Circuit Court, arguing that compelled production of documents before the hearing was necessary to develop his defense that he accidentally rather than negligently or carelessly released an inmate. Sheriff Kight again opposed the motion.

The Circuit Court, after a hearing, determined that the request for compelled pre-hearing production of records identified in categories 2 and 6 of the subpoena, pertaining to a particular officer's "mistaken release of an inmate" and any "accidental release of an inmate for the time period" since January 2005, was governed by Section 3–107(d)(1), specifically the phrase "[i]n connection with a disciplinary hearing," which it construed to include time before the hearing. The Circuit Court Judge then determined that the timing of compelled pre-hearing production of documents should be defined

by the amount of time required to review documents before the hearing and concluded, based on the estimated quantity of records at issue, that those records should be produced five days before the hearing. The Circuit Court denied the Motion to Stay Proceedings as moot, and Sheriff Popkin timely appealed.

**Discussion**

 Whether Section 3–107(d)(1) entitles Deputy Gindlesperger to compelled production of documents and records before an LEOBR hearing, pursuant to a subpoena appropriately issued before the hearing, is the gravamen of our consideration. Section 3–107(d)(1) provides:

> (d) *Subpoenas.*—(1) In connection with a disciplinary hearing, the chief or hearing board may issue subpoenas to compel the attendance and testimony of witnesses and the production of books, papers, records, and documents as relevant or necessary.

We have not, heretofore, had the opportunity to interpret this statutory provision.[9]

Sheriff Popkin argues that neither Section 3–107(d) nor the larger context of the LEOBR confers an entitlement to compulsion of pre-hearing production of documents. Rather, he argues that the language of the provision, specifically "[i]n connection with a disciplinary hearing," instructs that only at the hearing may a law enforcement officer enjoy the compelled production of relevant and necessary documents. He contends that a separate LEOBR provision, Section 3–

---

**9.** The Court of Special Appeals has previously considered the application of Section 3–107(d), and its predecessor, Section 730(j) of Article 27, Maryland Code (1957, 1996 Repl.Vol.), under circumstances inapposite to the issue in the present case before us, more specifically the authority of the hearing board to subpoena documents during the pendency of an investigation, *Miller v. Baltimore County Police Department*, 179 Md.App. 370, 385, 946 A.2d 1, 9–10 (2008) (holding that Section 3–107(d) did not provide the hearing board with authority to subpoena documents during an LEOBR investigation), and the officer's right to have a summons, now a subpoena, compel a witness's attendance and testimony at the hearing, *Mass Transit Administration v. Hayden*, 141 Md.App. 100, 784 A.2d 627 (2001).

104(n)(1), limits pre-hearing production only to the disclosure of the investigative file and exculpatory information.

Deputy Gindlesperger, conversely, asserts that compelled pre-hearing production comports with the language and purpose of the LEOBR and is necessary for an adequate defense, a fair trial and due process. He urges us to interpret the plain meaning of "[i]n connection with a disciplinary hearing" to include compelled production of documents before the hearing; he cites "the broad remedial purpose of the LEOBR" and the statute as a whole, including Section 3–107(e)(2) which provides the officer with "ample opportunity to present evidence and argument about the issues involved" at the hearing, as confirmation that his proposed broad interpretation is reasonable. He further argues that in order to prepare his defense of disparate treatment, he is entitled to review, in advance of the hearing, the records of officers investigated for the "mistaken release of an inmate."

Our goal and the cardinal rule of statutory interpretation is to "ascertain and effectuate the real and actual intent of the Legislature." *Robinson v. Baltimore Police Department*, 424 Md. 41, 50, 33 A.3d 972, 978 (2011), quoting *State v. Johnson*, 415 Md. 413, 421, 2 A.3d 368, 373 (2010). To do so, we first look to the language of the statute itself, to "determine its 'normal, plain meaning,' and we 'neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute.'" *Id.* at 50, 33 A.3d at 978. If we determine that the language of the statute is unambiguous and clearly consistent with the purpose of the statute, then our inquiry ends and "we apply the statute as written, without resort to other rules of construction." *Id.* at 51, 33 A.3d at 978, quoting *Johnson*, 415 Md. at 421, 2 A.3d at 373.

By its express language, Section 3–107(d)(1) does not mandate the compelled production of documents before an LEOBR hearing. The omission of the language "before a hearing" is telling because the Legislature in the LEOBR did include such language in other sections. In Section 3–104(n) of

the LEOBR, pre-hearing disclosure must be made of the name of the witnesses and charges as well as the investigatory file and exculpatory information:

(n) *Information provided on completion of investigation.*— (1) On completion of an investigation and at least 10 days *before a hearing,* the law enforcement officer under investigation shall be:

(i) notified of the name of each witness and of each charge and specification against the law enforcement officer; and

(ii) provided with a copy of the investigatory file and any exculpatory information.... [10]

(italics added). In the same vein, the Legislature also instructed the hearing board to notify each party of judicially-noticed facts before or during the hearing, or in preliminary reports under Section 3–107(g)(2)(i):

(2) The hearing board shall:

(i) notify each party of the facts so noticed either *before* or *during* the hearing, or by reference *in preliminary reports* or otherwise[.]

(italics added).

Deputy Gindlesperger argues, nonetheless, that the phrase "[i]n connection with a disciplinary hearing" in Section 3–107(d)(1) does serve as a broad, express mandate for pre-hearing compulsion of the requested documents. Sheriff Popkin, conversely, maintains that "in connection with" means at the hearing, such that a subpoena could not compel the production of documents before the hearing.

The Legislature used the phrase "in connection with" in the LEOBR only in two instances, in Section 3–107(d)(1), the present provision under review, and Section 3–107(h)(2), which refers to oath-taking:

---

10. In his brief, Deputy Gindlesperger argued that he should have been entitled to the materials as exculpatory information under Section 3–104(n)(1)(ii). This argument, however, was not presented as an argument before the hearing board and, thus, was not preserved for our consideration.

(h) *Oaths.*—(1) With respect to the subject of a hearing conducted under this subtitle, the chief shall administer oaths or affirmations and examine individuals under oath.

(2) In connection with a disciplinary hearing, the chief or a hearing board may administer oaths.

Connection, when used in the phrase "in connection with," is defined as a "relationship in fact." Merriam–Webster's Collegiate Dictionary 264 (11th ed.2005). Oath-taking under the LEOBR only occurs at the hearing, so that "[i]n connection with a disciplinary hearing," then, refers to that which transpires at the hearing.[11]

We reverse the Circuit Court's Order because Section 3–107(d)(1) of the LEOBR, by its plain meaning, does not entitle Deputy Gindlesperger to the compelled production of documents in advance of the LEOBR hearing.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.**

---

**11.** Although the LEOBR has its own statutory setting, the Administrative Procedure Act, in the context of other administrative hearings, also uses the phrase "in connection with." Section 10–218(10) of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.), for instance, requires "the presiding officer hearing a contested case" to make a record that includes "each intermediate proposed and final ruling by or for the agency, including each report or opinion issued in connection with the ruling." Obviously, like Section 3–107(d)(1) of the LEOBR, "in connection with the ruling" relates to reports or opinions issued at the time the ruling is made, which can only have occurred after a hearing.