**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1038

September Term, 2015

---

JAMES P. IRETON, JR.,

v.

LORE CHAMBERS

---

Graeff,
Kehoe,
Arthur,

JJ.

---

Opinion by Arthur, J.

---

Filed: July 28, 2016

One could say that this case is a case about nothing. More precisely, it is a case about whether a court can enter a judgment for nothing in damages against a defendant who has qualified immunity from "civil liability."

A jury found that the Mayor of Salisbury had committed a civil assault, but had not acted with the malice that is required to overcome his statutory immunity from "civil liability" for discretionary acts committed within the scope of his employment. The judge entered a judgment against the mayor for zero dollars. After a protracted post-judgment fight, which saw the judge revise and then re-revise the original judgment, the mayor appealed the zero-dollar judgment against him. We hold that because of the mayor's qualified immunity from "civil liability" in the absence of malice, the court should not have entered judgment against him for zero dollars, but instead should have entered judgment in his favor.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Lore L. Chambers is the former assistant city administrator of Salisbury, Maryland, a municipal corporation located in Wicomico County. James P. Ireton, Jr., was the mayor of Salisbury at the time.

After an incident, the details of which are not entirely clear,[1] Dr. Chambers was fired. She sued Mayor Ireton for assault. Among other defenses, the mayor claimed that, under Md. Code (1974, 2013 Repl. Vol.), § 5-507(a)(1) of the Courts and Judicial

---

[1] Nor are the details relevant, as neither side challenges the jury's verdict.

Proceedings Article ("CJP"), he was "immune as an official or individual from any civil liability" for his actions because he acted "without malice."[2]

At the end of a two-day trial on December 9, 2014, the parties agreed on a verdict sheet. Question 1 of the verdict sheet read, "Do you find by a preponderance of the evidence that Mayor Ireton assaulted Plaintiff Chambers?" The jury checked, "Yes." Question 2 read, "If you answered 'yes' to Question 1, do you find that Mayor Ireton acted with actual malice?" The jury checked, "No." Question 3 instructed the jury to "go no further" if it answered no to Question 2. The jury complied with the instruction and did not reach the next questions, which concerned damages.

On December 19, 2014, the clerk docketed a judgment in favor of Dr. Chambers, and against Mayor Ireton, for $0.00. On December 29, 2014, Mayor Ireton moved to revise the judgment, arguing that the court should have entered judgment in his favor. In an order filed on January 15, 2015, the judge granted that motion and ordered that the clerk enter judgment in favor of Mayor Ireton. The clerk entered the revised judgment on the docket on January 21, 2015.

On February 20, 2015, Dr. Chambers filed what she called a motion to "vacate" the court's previous order (and thus to reinstate the original zero-dollar judgment). The

---

[2] Section 5-507(a)(1) provides as follows: "An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."

court granted that motion on April 1, 2015, and on the following day the clerk docketed an order reinstating the original judgment.

On April 10, 2015, Mayor Ireton moved to alter or amend that revised order. On July 6, 2015, the court finally ended the back-and-forth motions, denying the mayor's motion and leaving the zero-dollar judgment intact.

Mayor Ireton noted this timely appeal on July 17, 2015.

## QUESTION PRESENTED

While the parties dispute both how to reach the question and to frame the standard of review, they both agree that the essential question is, "Did the Circuit Court for Wicomico County properly enter judgment against Mayor Ireton for zero dollars, when CJP § 5-507(a)(1) immunized him from 'any civil liability'?" We answer that the court should have entered judgment in the mayor's favor and should not have entered judgment against him in any amount – even the amount of zero dollars.

## DISCUSSION

### I.     Scope and Standard of Review

The parties disagree as to the precise standard of review. Mayor Ireton contends that the case presents a legal question, subject to de novo review, as it involves the interpretation of a statute. Dr. Chambers contends that we are reviewing the circuit court's decision not to revise the judgment and, hence, may consider only whether the court abused its discretion. To determine the standard of review, then, we must determine what exactly we are reviewing.

In this case, the court initially entered its judgment on December 19, 2014. Mayor Ireton filed a timely motion to alter or amend that judgment, which effectively deprived the judgment of finality until the court had decided his motion. *See* Md. Rule 8-202(c).

After the court granted the mayor's motion to alter or amend, the clerk entered a revised judgment on January 21, 2015. Exactly 30 days thereafter, on February 20, Dr. Chambers filed what she called a motion to "vacate," but which in substance was a motion to revise the revised judgment under Md. Rule 2-535(a). *See Gluckstern v. Sutton*, 319 Md. 634, 650-51 (1991).[3]

When a party files a revisory motion more than 10 days after the judgment, and the court revises its earlier ruling, the revised ruling becomes the final judgment. *See Gluckstern v. Sutton*, 319 Md. at 651 (citing *Yarema v. Exxon Corp.*, 305 Md. 219, 240-41 (1986)). Therefore, when the court granted Dr. Chambers's revisory motion and re-revised the judgment on April 1, 2015, that ruling, upon its entry on the docket, became the new final judgment.

When Mayor Ireton filed a second, timely motion to alter or amend, that motion effectively deprived the new judgment of finality until the court had decided it. *See* Md. Rule 8-202(c). The judgment finally became final only when the court denied the second

---

[3] Mayor Ireton incorrectly asserts that Ms. Chambers filed her motion more than 30 days after the judgment in question. Although the court ordered that the clerk enter judgment in favor of Mayor Ireton more than 30 days before Ms. Chambers filed her motion, the clerk did not actually enter the revised judgment until 30 days before her motion.

motion to alter or amend on July 6, 2015. Mayor Ireton took a timely appeal from that decision.

When a court enters a judgment against a party, as the circuit court did when it granted Dr. Chambers's revisory motion on April 1, 2015, the party does not forfeit the right to challenge that judgment on appeal merely by filing a timely motion to alter or amend. Hence, when the circuit court denied the mayor's second, timely post-judgment motion, he became entitled to appeal the final judgment itself (Md. Rule 8-202(c)), as well as any interlocutory orders previously entered in the action. Md. Rule 8-131(d).

For these reasons, the issue before us is not limited to whether the circuit court abused its discretion in denying Mayor Ireton's second motion to alter or amend the re-revised judgment for zero dollars in damages. Instead, we have the power to review the court's decision to grant Dr. Chambers's revisory motion and to enter a zero-dollar judgment against Mayor Ireton. Because that decision involves "an interpretation and application of Maryland statutory and case law, [we] must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Walter v. Gunter*, 367 Md. 386, 392 (2002) (citation omitted).[4]

---

[4] Even if we were to review this case under the abuse of discretion standard advocated by Dr. Chambers, "[a] decision that is legally incorrect is an abuse of discretion." *U.S. Life Ins. Co. v. Wilson*, 198 Md. App. 452, 464 (2011). Because the discretionary decision being challenged involved entering (or revising) a judgment based on what we regard as an erroneous interpretation of the law, the court had no discretion to refuse a timely request to fix the problem.

## II.    Analysis

Both sides agree that, absent malice, Mayor Ireton is "immune as an official or individual from any civil liability" for his tortious conduct (CJP § 5-507(a)(1)), but they disagree about what this qualified immunity entails.  Does it mean that a court cannot enter a judgment against the mayor, even for zero dollars?  Or does it mean that a court can enter a judgment against the mayor only if it is for no more than zero dollars?[5]

Mayor Ireton insists that immunity from "civil liability" equals immunity from any civil judgment, even one for zero dollars.  Dr. Chambers responds by characterizing section 5-507(b)(1) as a barrier to the award of damages.  Neither side discusses the language of the statute, the implications of their respective positions, or the similarities or differences in the language of other immunity statutes in the Courts and Judicial Proceedings Article.

We must decide whether the qualified immunity from "civil liability," within the meaning of CJP § 5-507(a)(1), entails immunity from the entry of a civil judgment or just immunity from a judgment for damages.  Obviously, this is a question of statutory interpretation.

Statutory interpretation is a question of law that we generally undertake on a de novo basis.  *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142 (2012) (citing *Gleneagles,*

---

[5] An appellate court, concerned about appellate jurisdiction, might wonder why the mayor is aggrieved by a judgment for zero dollars.  Even though the judgment requires him to pay nothing, we are satisfied that the mayor, as a public figure, is sufficiently aggrieved because of the reputational consequences of having a judgment against him.

*Inc. v. Hanks*, 385 Md. 492, 496 (2005)). "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *See*, *e.g.*, *Lockshin v. Semsker*, 412 Md. 257, 274 (2010) (citations omitted).

The language of CJP § 5-507(a)(1) is not as clear cut as the parties seem to believe. Black's Law Dictionary, from the same year the relevant language was inserted into Maryland's laws,[6] defines "civil liability" in two ways. "Civil liability" is first defined as "[t]he amenability to civil action as distinguished from amenability to criminal prosecution." BLACK'S LAW DICTIONARY 223 (5th ed. 1979). However, the next sentence defines "civil liability" as "[a] sum of money assessed either as general, special[,] or liquidated damages." *Id.* This first definition supports Mayor Ireton's view of the law, while the second supports Dr. Chambers's.[7]

The meaning of "civil liability" is not the only ambiguous feature of this statute. It is also unclear from the statute whether a plaintiff must prove malice as an additional

---

[6] The language creating a municipal officials' immunity "from any civil liability," under certain circumstances, became part of Maryland law in 1979. *See* 1979 Md. Laws, ch. 645, § 1, amending Article 23A, § 1B. In 1990, this language was moved to CJP § 5-321, and Article 23A, § 1B, was amended to refer to the new statute. 1990 Md. Laws, ch. 546, §§ 1, 3. In 1997 the language was moved to CJP § 5-507. 1997 Md. Laws, ch. 14, § 9. In 2013, the statute was again amended, but the language that the official "shall be immune as an official or individual from any civil liability for the performance of the action" has remained consistent through all of the amendments. 2013 Md. Laws, ch. 119, § 3. The 2013 law repealed the (now entirely obsolete) Article 23A, including the language in § 1B referring to CJP § 5-507. 2013 Md. Laws, ch. 119, § 1.

[7] Prior and subsequent versions of Black's Law Dictionary, to the extent that they help us interpret a statute written in 1979, still embrace both definitions.

element of her case-in-chief or whether the absence of malice is an affirmative defense that an official must raise and prove.[8] In either event, however, a finding of no malice would be fatal to the plaintiff's case. If the plaintiff failed to prove malice as an element of her case, the court would be obligated to enter judgment against her. By the same token, if the defendant established the absence of malice in an affirmative defense that trumped the plaintiff's claims, the court would be obligated to enter judgment against her notwithstanding that she had proved all of the elements of her case. In short, because Dr. Chambers was not entitled to a judgment in her favor unless the jury found malice, the court should not have entered judgment against Mayor Ireton – even for zero dollars.[9]

Had Mayor Ireton prevailed on summary judgment on the ground that Dr. Chambers had failed to generate a genuine dispute of material fact about whether he had

---

[8] At oral argument, Mayor Ireton's lawyer said that absence of malice is an affirmative defense. However, in *Thomas v. City of Annapolis*, 113 Md. App. 440, 460 (1997), this Court stated that under § 5-507's predecessor, former CJP § 5-321, the plaintiff "had the burden to provide legally sufficient evidence to permit" an "inference" of malice against the Mayor of Annapolis, among others. Similarly, in *Thacker v. City of Hyattsville*, 135 Md. App. 268, 311 (2000), this Court proceeded on the premise that the plaintiff had an obligation to offer evidence proving malice sufficient to overcome the immunity contained in § 5-507.

[9] Under the Local Government Tort Claims Act, a plaintiff sometimes may be able to recover tort damages from a local government if the government employee committed a tort within the scope of his or her employment, but did not act with "actual malice." *See* CJP § 5-302(b); *id.* § 5-303(b). In this case, however, Ms. Chambers could not recover damages from the City of Salisbury, because the Local Government Tort Claims Act permits the City to assert Mayor Ireton's immunity as a complete defense. *See id.* § 5-303(e). After a finding that the mayor did not act with malice, therefore, neither the court nor the jury would have any reason to proceed further to ascertain the damages that the City would be liable to pay.

acted with malice, the court would, presumably, have directed the entry of judgment in his favor; it would not have entered judgment against him for zero dollars. *See, e.g.*, *Thacker v. City of Hyattsville*, 135 Md. App. 268, 311 (2000) (affirming entry of summary judgment against plaintiff who failed to offer evidence that Mayor of Hyattsville, and others, acted with malice); *Thomas v. City of Annapolis*, 113 Md. App. 440, 460 (1997) (affirming entry of summary judgment against plaintiff who failed to provide evidence legally sufficient to permit inference of malice on part of Mayor of Annapolis, among others). Likewise, had Mayor Ireton prevailed on a motion for judgment either at the end of the plaintiff's case or at the end of all the evidence because Dr. Chambers did not produce sufficient evidence to support a finding that he had acted with malice, the court would also have entered judgment in his favor; again, it would not have entered judgment against him for zero dollars. It follows that the court could not properly enter judgment against the mayor, even for zero dollars, after the jury had affirmatively found that he did not act with malice. Because the mayor is immune from "civil liability" in the absence of malice, he was entitled to judgment in his favor when the jury found that he had not acted with malice.

In equating immunity from civil liability with immunity from an award of damages, Dr. Chambers fails to recognize that the concept of "civil liability" is not confined to liability for damages: it may also include liability for equitable relief, such as an injunction. This prompts the question of what would happen if a plaintiff requested damages for an official's past misconduct, as well as an injunction against future misconduct. Under Dr. Chambers's theory, it appears that the official's immunity from

"civil liability" would not protect against liability for equitable relief, because it would not entail an award of damages.  Because we find it exceedingly improbable that the General Assembly intended to create an immunity from "civil liability" that excludes an entire category of civil remedies, we reject Dr. Chambers's interpretation.

Finally, it is readily apparent that when the General Assembly intends to create an immunity only from an award of damages, it knows how to do so.  For an example, one need read no farther than the next subparagraph of CJP § 5-507(a): "An official of a municipal corporation is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim for damages in excess of the limits of any applicable policy of motor vehicle insurance."  CJP § 5-507(a)(2).  The Courts and Judicial Proceedings Article contains a number of other similar statutes that grant immunity from only an award of damages, and not from "civil liability."  *See*, *e.g.*, CJP § 5-504(1) (making the Department of Liquor Control for Montgomery County "[i]mmune for all suits for damages"); CJP § 5-518(f) (providing that a member of a county board of education, "acting within the scope of the member's authority, without malice and gross negligence, is not personally liable for damages resulting from" tortious acts or omissions up to the limits of the board's insurance, "including damages that exceed the limitation on the county board's liability").[10]

_____

[10] Other statutes create a powerful immunity from being sued in the first instance, and not merely from being held civilly liable.  *See*, *e.g.*, CJP § 5-505 ("[t]he Tri-County Council for Southern Maryland is immune from being sued"); CJP § 5-506 ("[t]he Tri-County Council for Western Maryland is immune from being sued"); *see also* CJP § 5-501 (providing that "[a] civil or criminal action may not be brought against" certain

- 10 -

Because the legislature has demonstrated its ability to distinguish immunity from damages from immunity from "civil liability," we decline to equate the two. Accordingly, we reject Dr. Chambers's contention that CJP § 5-507(a)(1) allows a court to enter a judgment against a municipal official, as long as the official is not obligated to pay any damages.

In summary, the circuit court should not have entered judgment against Mayor Ireton, even for zero dollars. Once the jury found that the mayor did not act with malice, his qualified immunity from "civil liability" required the court to enter judgment in his favor and against Dr. Chambers.

> **JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED. CASE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT AGAINST LORE CHAMBERS AND IN FAVOR OF JAMES P. IRETON, JR. APPELLEE TO PAY ALL COSTS.**

---

county, city, or town officials "for words spoken at meeting of the council or board of commissioners" or "a committee or subcommittee thereof"). Many others mirror § 5-507(a)(1) in granting immunity from civil liability in certain circumstances. *See*, *e.g.*, CJP § 5-508 (creating immunity from "civil liability for any act or omission" by "[a]n officer or director of a public drainage association or public watershed association, while acting in a discretionary capacity, without malice, and within the scope of the officer's or director's employment or authority"); CJP § 5-509(c)(1) (creating immunity "from civil liability for any act or omission" of "an official of a special taxing district, while acting in a discretionary capacity, without malice, and within the scope of the official's authority"); CJP § 5-515 (providing that "[a]ny member of the Guardianship Advisory Board in the Department of Aging acting in good faith and within the scope of the member's duties is immune from civil liability as a result of those acts").