*MICHAEL FOY v. BALTIMORE CITY DETENTION CENTER*
Case No. 1472, September Term, 2016, Argued, 9/12/2017
Opinion by Harrell, J.

**HEADNOTES**

**JUDICIAL REVIEW – FINAL DECISION OF ADMINISTRATIVE AGENCY UNDER MARYLAND CODE, STATE GOVERNMENT ARTICLE § 10-222(h) – APPEALABLE JUDGMENT**

A remand ordered by a circuit court pursuant to § 10-222(h) of the Maryland Code, State Government Article is an appealable final order. This result is dependent on the circuit court having reviewed the administrative record, in light of the question(s) raised for judicial review, before such a remand order may be an appealable final judgement.

**STATUTES – MARYLAND CORRECTIONAL OFFICERS' BILL OF RIGHTS § 10-910(b)(1) – STATUTORY TIME FRAME FOR APPOINTING AUTHORITY TO INCREASE PUNISHMENT**

Section 10-910(b)(1) of the Maryland Correctional Officers' Bill of Rights grants the appointing authority "30 days after receipt of the recommendations of the hearing board" in which to conduct, among other things, a recorded meeting with the subject employee, before any punishment may be increased. The plain meaning of this provision provides the appointing authority 30 days to render a final order increasing the punishment, commencing when it receives the Hearing Board's recommendation.

**STATUTES – MARYLAND CORRECTIONAL OFFICERS' BILL OF RIGHTS § 10-910(b)(6) – MANDATORY COMPLIANCE**

Section 10-910(b)(6) of the Maryland Correctional Officers' Bill of Rights (Corr. Servs.) states, "[w]ith the approval of the Secretary, the appointing authority may increase the recommended penalty of the hearing board if the appointing authority" completes four mandatory steps under (b)(6)(i-iv). Substantial compliance with Corr. Servs. §§ 10-910(b)(6)(i-iv) is insufficient. In any event, the record of this case would not support a finding of substantial compliance. Failure to comply timely under Corr. Servs. § 10-910(b)(1) with all requirements of Corr. Servs. §§ 10-910(b)(6)(i-iv) closes the window of opportunity for the appointing authority to increase a correctional officer's penalty beyond that proposed by the hearing board, unless the correctional officer agrees to waive or extend the 30-day period.

Circuit Court for Baltimore City
Case No. 24-C-16-000255

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1472

September Term, 2016

_____

MICHAEL FOY

v.

BALTIMORE CITY DETENTION CENTER

_____

Eyler, Deborah S.
Leahy,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

    JJ.

_____

Opinion by Harrell, J.
Dissent by Eyler, Deborah S.

_____

Filed:  December 4, 2017

Appellant, Michael Foy, complains here that the Circuit Court for Baltimore City remanded erroneously his employment disciplinary case to Baltimore City Division of Pretrial Detention and Services (DPDS) Commissioner, John S. Wolfe, to conduct a second penalty increase meeting. Foy contends that remand to the Commissioner is inappropriate and that the Commissioner's prior decision to terminate him as a prison guard be reversed, without further administrative proceedings. He asserts Commissioner Wolfe abridged his rights under the Correctional Officers' Bill of Rights[1] (COBR)[2] when the Commissioner increased to termination the Baltimore City Department of Corrections' Hearing Board's (Hearing Board) recommended lesser punishment, without conducting a timely and proper on-the-record penalty increase meeting, and thus violated Md. Code (1999, 2017 Repl. Vol.), § 10-910(b)(6)(ii) of the Correctional Services Article (Corr. Servs.).[3]

---

[1] Md. Code (1999, 2017 Repl. Vol.), §§ 10-901-10-913 of the Correctional Services Article (Corr. Servs.).

[2] The COBR took effect on 1 October 2010. As such, scarce appellate precedent on this topic exists. The COBR's roots are grounded, however, in the earlier-adopted Law Enforcement Officer's Bill of Rights (LEOBR), which applies to certain police officers of state and local agencies, but which did not extend to any local or state correctional officers. *Compare* Corr. Servs. § 10-910(b), *with* Md. Code (2003, 2011 Repl. Vol.) § 3-108(d) of the Public Safety Article (Pub. Safety). *See Kearney v. France*, 222 Md. App. 542, 544, 114 A.3d 221, 222 (2015) (noting that the Floor Report for House Bill 1245 states that the COBR's provisions "are similar to the provisions of the Law Enforcement Officer's Bill of Rights . . . Although provisions of the LEOBR and COBR may differ in certain aspects, we are persuaded that disciplinary cases decided under the LEOBR have instructive value."); *Ellsworth v. Baltimore Police Dep't*, 438 Md. 69, 91 n.20, 89 A.3d 1183, 1196 n.20 (2014) (COBR was adapted from the LEOBR (citing Senate Judicial Proceedings Committee Floor Report, S.B. 887 (2010)).

[3] The Hearing Board, Commissioner Wolfe, and the DPDS are agents or subsidiary departments of the Baltimore City Detention Center, respectively.

The circuit court (in its remand order) found that:

[Commissioner] Wolfe failed to satisfy the final portion of [Corr. Servs. § 10-910(b)(6)(ii)] when the audio equipment failed to capture [Appellant's penalty increase meeting] on the record[,] . . . [and] a substantial right of [Appellant's] has been prejudiced when the penalty increase hearing, due to the failure of the audio recording equipment, was not captured on the record . . . .

(Alteration in original).

In this appeal, Appellant poses the following questions:

I.  Did Appellee [Commissioner Wolfe] violate Appellant's Rights under the COBR when he increased the recommended penalty of the Hearing Board without recording the penalty increase [meeting]; and

II.  Did the circuit court err in remanding the case to conduct another penalty increase [meeting]?

Foy contends that Appellees violated the COBR when Commissioner Wolfe failed to follow the mandatory requirements of Corr. Servs. § 10-910(b)(6)(ii)[4] in the course of increasing Appellant's disciplinary punishment. Specifically, Commissioner Wolfe failed to "allow[] [Appellant] to be heard on the record" by neglecting to capture the contents of the only penalty increase meeting convened and, in place of such a record, tendering an

---

[4] (b)(6) With the approval of the Secretary, the appointing authority may increase the recommended penalty of the hearing board if the appointing authority:
(i) reviews the entire record of the proceedings of the hearing board;
(ii) meets with the correctional officer and allows the correctional officer to be heard *on the record*;
(iii) at least 10 days before the meeting, discloses and provides in writing to the correctional officer any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based; *and*
(iv) states on the record the substantial evidence on which the appointing authority relied to support the increase of the recommended penalty.
Corr. Servs. § 10-910(b)(6) (emphasis added).

uncompliant alternative "record." The window of opportunity for enhancing the Hearing Board's recommended sanction closed once Commissioner Wolfe failed to comply with Corr. Servs. § 10-910(b)(6)(ii) within the time frame allowed by the statute.

In its initial response to this judicial review action on appeal, Appellees filed with this court a motion to dismiss asserting that the circuit court's order of remand was not an appealable final judgment because the remand contemplated further administrative proceedings. On the merits, Appellees argue that Commissioner Wolfe acted in good faith and complied substantially with the requirements of Corr. Servs. § 10-910(b)(6)(ii).

His good faith efforts at substantial compliance are represented by a memorandum memorializing what, according to his recollection, was said at the uncaptured penalty increase meeting and his attempts to reschedule the meeting within the allowed timeframe, presumably to rectify the recording equipment malfunction that occurred earlier. In addition, Appellees point also to a lack of any prejudice suffered by Appellant due to the absence of a formal recording.

We deny Appellees' motion to dismiss. We hold that Appellant's COBR rights were violated. Moreover, the circuit court remanded erroneously Appellant's case to Commissioner Wolfe to conduct a second, but untimely on-the-record meeting. The proper remedy is to reinstate the Hearing Board's penalty recommendation as the final administrative action (the computation of back-pay aside) under the circumstances of this case.

**Statement of Facts**

On 12 January 2014, Foy, a Lieutenant at the Baltimore City Detention Center (BCDC), was accused of using excessive force against a BCDC inmate.[5] On 10 April 2014, the BCDC issued to Foy a notice of disciplinary charges recommending his termination. Foy appealed to the Hearing Board. The Hearing Board found Foy guilty of ten of twelve disciplinary charges brought against him. The Hearing Board recommended that his penalty be reduced to a "Transfer to Baltimore City Booking and Intake Center & Demotion to Sergeant."

Commissioner Wolfe received a copy of the Hearing Board's recommendation on 23 November 2015. He reviewed the administrative record made to that date, found the Hearing Board's penalty inadequate, and proposed to increase Foy's punishment under Corr. Servs. § 10-910(b)(6). On 9 December 2015, the Commissioner conducted a penalty increase meeting with Foy and his counsel.[6] Following the meeting, Commissioner Wolfe

---

[5] The Hearing Board found that Appellant and a Sergeant of the BCDC were conducting security rounds in the BCDC. During the rounds, Appellant "engaged in a verbal discussion" with a detainee. The Sergeant then struck the conversing detainee. The detainee charged the Sergeant, but was immediately thrown to the floor with no further resistance. Appellant proceeded to step on the detainee's neck until the Sergeant handcuffed the detainee.

> The Hearing Board found that [Foy] failed to adhere to the Use of Force Policy, which required that when any form of force is used either spontaneous or planned it is to be reported with supporting documentation. [Foy] failed to report any type of Use of Force the day of the incident . . . Therefore, he is subject to disciplinary action by the appointing authority. . .

Foy has not challenged the Hearing Board's findings of fact or conclusions of law.

[6] It is represented that Foy and his attorney were given the opportunity to present arguments as to why the penalty should not be increased. Although no contemporaneously-made record of the hearing exists, we have been told that Foy asked that his years of service

4

discovered that the audio recording equipment used to make a verbatim record of the meeting malfunctioned, failed to capture what was said at the meeting, as required by Corr. Servs. § 10-910(b)(6)(ii). The Commissioner notified promptly Foy's counsel of the equipment failure. The Commissioner and Appellant's counsel agreed to reconvene, with Foy, on 17 December 2015 for another attempt at holding a recorded meeting.[7]

On 10 December 2015, Commissioner Wolfe memorialized his recollection of what transpired at the unrecorded penalty increase meeting in a written memorandum to Stephen T. Moyer, Secretary of Public Safety and Correctional Services.[8] Foy's counsel confirmed with Commissioner Wolfe's office to hold a remedial penalty increase meeting on 16 December 2015. Later that day, however, Commissioner Wolfe canceled, without explanation, the meeting. Commissioner Wolfe made no further effort to reschedule a meeting. Rather, on December 16, Commissioner Wolfe, with the permission of Secretary Moyer, increased the Hearing Board's recommended punishment of Foy from "Transfer to Baltimore City Booking and Intake Center & Demotion to Sergeant" to termination of his employment. Foy filed an action for judicial review in the Circuit Court for Baltimore City, arguing solely that the Commissioner violated his rights under the COBR when he

---

be considered when rendering a final decision; the BCDC is a unique type of institution; and, this was his first infraction for an incident of this type.

[7] The circuit court found that the parties' schedules "precluded another meeting before [15 December 2015] which would have been within the statutory time frame," under the circuit court's theory of when the statutory period for action ended. We will address that point later.

[8] We were informed that neither Foy nor his counsel received notice of the existence of this memorandum until after the termination was announced and the judicial review action had been filed.

increased the Hearing Board's recommended punishment without recording the penalty increase meeting. Foy requested the circuit court to rescind Commissioner Wolfe's increased penalty, re-impose the Hearing Board's recommended penalty, and reinstate him accordingly, with commensurate back pay.

The circuit court found, in relevant part:

> That an error of law occurred at the penalty increase hearing when the audio recording equipment failed and there was no audio record of the meeting; and it is further found . . . [that Commissioner] Wolfe failed to satisfy the final portion of [Corr. Servs. § 10-910(b)(6)(ii)] when the audio equipment failed to capture the hearing on the record . . . and a substantial right of [Foy] has been prejudiced when the penalty increase hearing . . . was not captured on the record.

(Emphasis omitted).

As a result, the circuit court ordered that "this case be remanded for the purpose of conducting another penalty increase meeting so that a complete record of the administrative proceeding is available for the [c]ourt on [j]udicial [r]eview."

## Analysis

### I. Appellees' Motion to Dismiss.

#### a. Appellees' Arguments.

Appellees move to dismiss this appeal on "the grounds that [we] lack[] jurisdiction over this matter because the order appealed from is not a final judgment." They aver that Appellant has not been put out-of-court by the remand order from which he sought judicial review. As such, Appellant cannot satisfy the critical requirement for an appealable final

6

judgment. The circuit court ordered a remand for the appointing authority[9] to conduct another penalty increase meeting so that a complete record might be available for any further judicial review.

### b. Appellant's Arguments.

Appellant responds that the circuit court's remand order was authorized by Md. Code (1984, 2014 Repl. Vol.) § 10-222(h)(1) of the State Government Article (State Gov't), and is an appealable final judgment under *Metro Maint. Sys. S., Inc. v. Milburn*, 442 Md. 289, 299-307, 112 A.3d 429, 435-40 (2015). Under *Milburn*, remands ordered pursuant to State Gov't § 10-222(h) are appealable immediately because the order terminates the judicial proceeding, and denies the parties any means of further prosecuting or defending the action.

### c. The Circuit Court's Remand Order is an Appealable Final Judgment.

The resolution of a motion to dismiss raised on appeal is left to the sound discretion of this Court. MD. RULE 8-602. In the exercise of that discretion, we will dismiss an appeal if it is not a final judgment entered in a civil or criminal case by a circuit court, or if a non-final judgment does not fit within the statutory exceptions or the collateral order doctrine.[10] A ruling must have the following "three attributes to constitute a final judgment: 1) it must be intended by the court as an unqualified, final disposition of the

---

[9] The Maryland Code defines "Appointing Authority" when used in Corr. Servs. § 10-910 as "an individual or a unit of government that has the power to make appointments and terminate employment." Md. Code (1993, 2015 Repl. Vol.), § 1-101(b) of the State Personnel & Pensions Article.

[10] None of the statutory exceptions or the collateral order doctrine are relevant here.

matter in controversy; (2) unless the court acts pursuant to Maryland Rule 2–602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties, it must adjudicate or complete the adjudication of all claims against all parties; (3) it must be set forth and recorded in accordance with Rule 2–601."[11] *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989). The purpose of the final judgment rule is "to promote judicial efficiency by avoiding piecemeal appeals." *Milburn*, 442 Md. at 298, 112 A.3d at 435 (citing *Brewster v. Woodhaven Bldg. & Dev., Inc.*, 360 Md. 602, 616, 759 A.2d 738 (2000)).

---

[11] In *Milburn*, the Court of Appeals engaged in a thorough evaluation of Maryland law defining the meaning of these characteristics:

> In order to be an unqualified, final disposition, an order of a circuit court must be so final as either to determine and conclude the rights involved or to deny the appellant the means of further prosecuting or defending his or her rights and interests in the subject matter of the proceeding. The order must be a complete adjudication of the matter in controversy, except as to collateral matters, meaning that there is nothing more to be done to effectuate the court's disposition.
>
> An order need not resolve the merits of a case, however, to constitute a final judgment. Even if the order does not decide and conclude the rights of the parties, it nevertheless will be a final judgment if it terminates the proceedings in that court and denies a party the ability to further prosecute or defend the party's rights concerning the subject matter of the proceeding. Such an order has been described as one that has the effect of putting the party out of court.
>
> In determining whether an order that terminates proceedings in a particular court can be said to put the party out of court the key question is whether the order contemplates that the parties will no longer litigate their rights in that court.
>
> The order need only have the effect of terminating the proceedings in a particular court; the availability of another forum in which the parties may litigate their dispute is irrelevant to finality.

*Milburn*, 442 Md. at 299-300, 112 A.3d at 435-36 (internal citations and quotation marks omitted).

Assessing specifically whether a circuit court's remand order entered in a judicial review action is an appealable final judgment, *Milburn* noted:

> if, applying the appropriate standard of review, the [circuit] court finds that there was not substantial evidence to support the agency decision or that the agency made an error of law, it will likely remand the case to the agency, which will ultimately determine the parties' rights by applying the law as directed by the circuit court. Such a remand may appear to be non-final in nature, but under the principles of finality in Maryland . . . many such remands are appealable final judgments.

*Milburn*, 442 Md. at 301, 112 A.3d at 436. When a circuit court considers a judicial review action from a state administrative agency decision, and remands the case because the agency's decision is inconsistent with law, that iteration of the case has reached its end. *Id.* Therefore, a remand after a circuit court has conducted a judicial review of the sole question raised in the administrative action, precluding the parties from further contesting or defending the validity of the agency's decision on the merits in that case, is an appealable final judgment. *Milburn*, 442 Md. at 305, 112 A.3d at 439. *See also Hickory Hills Limited Partnership v. Secretary of State*, 84 Md. App. 677, 686, 581 A.2d 834 (1990) (contrasting the type of remand occurring before judicial review occurs with a "remand that a court might order under the APA after the court has conducted judicial review and made its assessment of the agency decision.").

*Milburn* declared that:

> [A] remand, governed by . . . [State Gov't] § 10–222(h), is a final order because, when the circuit court orders a remand after judicial review, it does so because it has found that the agency's decision is inconsistent with law or unsupported by substantial evidence. The parties can no longer defend or challenge that agency decision in the circuit court and there is nothing further

for that court or the parties to do. Thus, that remand terminates the circuit court proceedings.

*Milburn*, 442 Md. at 307, 112 A.3d at 440.

The circuit court's order here is a hybrid of judicially-reviewed conclusions and a determination that the "record is insufficient to allow for a fair consideration of the issue."[12] For this reason, we find *Milburn* and *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981) instructive.

*Milburn* noted, in the context of a challenge to the appealability of a circuit court's remand order, that the work of the circuit court was not done; the circuit court deferred further consideration of Milburn's challenges to the merits of the agency's decision pending remand and the agency's subsequent remedial decision. *Milburn*, 442 Md. at 308, 112 A.3d at 441. ("There was no discussion of the agency record or the merits of the case. The circuit court characterized the [agency's pre-emptive] motion as a request for a 'do over' that would precede the court's consideration 'whether there's substantial evidence and . . . whether or not to affirm'"). The "remand order did not involve a determination whether the agency decision is consistent with law or supported by substantial evidence." *Milburn*, 442 Md. at 310, 112 A.3d at 441. Thus, *Milburn* held "that a remand that precedes any judicial review is not a final judgment." *Milburn*, 442 Md. at 310, 112 A.3d at 442.

In *Schultz*, the context was of a local government board of zoning appeals denying property owners a requested special exception. *Schultz*, 291 Md. at 3-4, 432 A.2d at 1321.

---

[12] The issue the circuit court refers to is Appellant's challenge to Commissioner Wolfe's imposition of a heightened punishment.

The property owners appealed to the circuit court, which conducted a review of the administrative record and proceedings. *Id.* It "determined that there had been a denial of due process because the [b]oard had considered evidence submitted after the close of the hearing." *Id.* The circuit court "reversed and remanded the matter to the [b]oard for a new hearing." *Schultz*, 291 Md. at 4, 432 A.2d at 1321-22. On appeal, the Court of Appeals agreed that, under those circumstances, a circuit court's order remanding a proceeding to an administrative agency is an appealable final order. *Schultz*, 291 Md. at 6, 432 A.2d at 1322 (citing *Department of Public Safety & Correctional Services v. Le Van*, 288 Md. 533, 542-43, 419 A.2d 1052, 1057 (1980)). The circuit court's finding in its remand order that the agency's decision was inconsistent with law was an appealable final judgment. *Id.*

Here, the findings of the circuit court in its remand order are a mix of the characteristics of the orders in *Milburn* and *Schultz*, but, in our view, bear ultimately more resemblance to *Schultz*. The circuit court in the present case made findings of law based on the state of the record presented to it (vis a vis the statutory requirement for conducting an on-the-record penalty increase hearing within the allowable time period), finding that:

> [n]either [Commissioner] Wolfe's written memorandum of [10 December 2015] to Secretary Stephen T. Moyer nor [Commissioner] Wolfe's Affidavit of [5 May 2016], *meet the statutory requirements of a hearing on the record nor do these writings cure the defect as it is neither objective nor complete . . .*, as [Appellant] asserts, as required by [MD. RULE 7-113(d)(2)], that an error of law occurred at the penalty increase hearing when the audio recording equipment failed and there was no audio record of the meeting . . . , *[Commissioner] Wolfe satisfied the statutory requirement* of [Corr. Servs. § 10-910(b)(6)(ii)] by meeting with [Appellant] and his counsel, allowing [Appellant] to be heard but *[Commissioner] Wolfe failed to satisfy the final portion of this particular statutory requirement* when the audio equipment failed to capture the hearing on the record . . . , [and] *a substantial right of*

11

> *[Appellant's] had been prejudiced* when the penalty increase hearing . . . was not captured on the record.

(Emphasis added).

In *Schultz,* the circuit court reviewed the agency decision, made a determination as to its legality, and remanded the case for additional proceedings. *Schultz,* 291 Md. at 4, 432 A.2d at 1321-22. The parties could take no further action in the circuit court at that point, and the court chose to do nothing more. *Id.* Analogously, the circuit court found here that Commissioner Wolfe violated Appellant's Corr. Servs. § 10-910(b)(6) rights. Given Appellant's sole argument in the judicial review action, there was nothing more for the circuit court or either party to do regarding this finding.

Appellant did not contend (and has not contended) below or here that the Hearing Board erred regarding its findings of fact, conclusions of law, or its recommended punishment.[13] Rather, Appellant contends solely that Commissioner Wolfe's failure to comply with the mandatory requirements of Corr. Servs. § 10-910(b)(6), especially when he still had time to do so after learning of the equipment malfunction, warrants vacation of Appellant's employment termination and reinstatement of the Hearing Board's recommendation, with commensurate back-pay.

Appellees point to the circuit court's findings that sound more like those in *Milburn*, however:

---

[13] The circuit court found that "the [Hearing] Board issued its decision finding that [Foy] used excessive force against an inmate and recommended a penalty of demotion to Correctional Officer Sergeant and a transfer to the Baltimore City Center Booking and Intake Center."

> [Foy] demonstrated that the record is insufficient to allow for a fair consideration of the issues and simply cannot be reconstructed; and . . . it is hereby ordered, that this case be remanded for the purpose of conducting another penalty increase hearing so that a complete record of the administrative proceeding is available for the [c]ourt on [j]udicial [r]eview.

(Emphasis omitted).

*Milburn* noted that "there had been no judicial assessment of the legality of the agency's decision; the remand order merely acceded to the agency's request for a limited opportunity to reconsider and possibly modify its findings or decision [before] judicial review." *Milburn*, 442 Md. at 309–10, 112 A.3d at 441. The circuit court did not discuss the agency record or the merits of the contentions put on-the-table by Milburn in the case. *Milburn*, 442 Md. at 296, 112 A.3d at 433. As in *Milburn*, here the circuit court's findings are premised on a similar basis, in part. They lack any discernable conclusions of law or findings of fact. Rather, the circuit court appeared to profess an inability to assess the merits of Commissioner Wolfe's conclusion to fire Foy, in light of the unrecorded penalty increase meeting.

Appellees' life raft leaks, however. The sole dispute before the circuit court and here is not over whether the conclusion Commissioner Wolfe reached was supported by substantial evidence, but rather whether the process utilized to reach it violated Foy's COBR rights. Unlike *Milburn*, the circuit court here made clear findings on the merits of Appellant's sole appellate claim. Most notably, the circuit court found that "*an error of law* occurred at the penalty increase hearing" and "Commissioner Wolfe "failed to satisfy the final portion of [Corr. Servs. § 10-910(b)(6)(ii)] when [he] . . . failed to capture the

13

hearing *on the record*." (emphasis added). The circuit court's findings that an error of law occurred and that Commissioner Wolfe failed to satisfy a statutory requirement are more in line with *Schultz's* holding that the zoning body denied the property owners due process. *Schultz*, 291 Md. at 4, 432 A.2d at 1321-22.

Finality is determined by what further proceedings, if any, will occur in the circuit court. *Milburn*, 442 Md. at 310, 112 A.3d 442. No further proceedings will occur on the circuit court's findings of law on the merits of Appellant's sole legal challenge. The circuit court found "that in a judicial review of an administrative hearing, the [c]ourt may 'remand the case for further proceedings.'" (citing State Gov't § 10-222(h)). *Milburn* held that a remand ordered under State Gov't § 10-222(h) is an appealable final judgment. *Milburn*, 442 Md. at 307, 112 A.3d at 440 (2015). We agree. Thus, we deny Appellees' motion to dismiss.

## II. The Commissioner Violated Appellant's COBR Rights When He Failed to Record a Penalty Increase Meeting Within the Time Allowed By Law.

### a. *Appellant's Arguments*.

Foy avers that Corr. Servs. § 10-910(b)(6) requires, on the part of Commissioner Wolfe, the satisfaction of four requirements within 30 days after the Commissioner received the Hearing Board's decision before he may increase Appellant's penalty beyond that proposed by the Hearing Board. Commissioner Wolfe's failure to capture the penalty increase meeting on the audio record was in violation of Corr. Servs. § 10-910(b)(6)(ii). His unexplained failure to conduct and record a remedial meeting within the allowed

14

statutory time period exacerbates the circumstances. Such failures preclude Commissioner Wolfe from increasing the Hearing Board's proposed penalty.

Appellant maintains that Commissioner Wolfe's conduct evinces a disregard of the requirements of Corr. Servs. § 10-910(b)(6). In support of this contention, Appellant notes that the Commissioner canceled, unilaterally and without elaboration, the second penalty increase meeting set for December 17. Moreover, his attempt to comply with compiling a "record" of the unrecorded meeting through the December 10 memorandum to Secretary Moyer was not provided to Appellant until after the judicial review action was filed. Notably, Corr. Servs. § 10-904(d)[14] permits correctional officers to waive their COBR rights under certain circumstances. Appellant was not asked (nor did he agree) to waive the Corr. Servs. § 10-910(b)(1) 30-day time limit, which might have mitigated Commissioner Wolfe's post-hoc "scheduling conflict" assertion and allowed a proper opportunity to conduct the remedial meeting.

### b. *Appellees' Arguments.*

Appellees respond that Commissioner Wolfe complied with the spirit and intent of Corr. Servs. § 10-910(b)(6). He followed (or attempted to follow) each of the steps in Corr.

---

[14] (d) A correctional officer may waive any or all of the rights under [Corr. Servs. §§10-900-10-913] if:
> (1) the waiver is signed and acknowledged by the correctional officer; and
> (2) the waiver is given after the correctional officer is given an opportunity to consult with legal counsel selected by the correctional officer or a representative from the correctional officer's employee organization.

Corr. Servs. § 10-904(d).

15

Servs. § 10-910(b)(6), but it was only the unforeseeable recording equipment malfunction that caused him to come up short. Commissioner Wolfe overcame the mechanical glitch by capturing the contents of the initial penalty increase meeting in the memorandum to Secretary Moyer. Appellees argue that Appellant had every opportunity to "say whatever he desired to the appointing authority regarding the penalty." Moreover, Appellant failed to address how an absence of an audio record of the penalty increase meeting would change the outcome of the case. Thus, the inadvertent malfunction worked no violation of the rights of Appellant.

### c. *Standard of Review*

On review of an administrative agency's ruling, this Court reviews the agency's decision, not the circuit court's decision. *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248, 949 A.2d 85, 91 (2008) (citing *Anderson v. Gen. Cas. Ins. Co.*, 402 Md. 236, 244, 935 A.2d 746, 750 (2007)). Our goal is to determine whether the agency's holding is in accordance with the law or whether it is arbitrary, illegal, or capricious. *Md. Dep't of the Env't v. Ives*, 136 Md. App. 581, 585, 766 A.2d 657 (2001) (citation omitted). We "apply a limited standard of review and will not disturb an administrative decision on appeal if substantial evidence supports factual findings and no error of law exists." *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 273-74, 47 A.3d 1087, 1092 (2012) (quoting *Tabassi v. Carroll County Dep't of Soc. Servs.*, 182 Md. App. 80, 86, 957 A.2d 620, 623 (2008)).

When, however, "the question before the agency involves one of statutory interpretation or an issue of law, our review is more expansive." *Eastern Outdoor Advert. Co. v. Mayor & City Council*, 146 Md. App. 283, 302, 807 A.2d 49, 60 (2002) (quoting *Dep't of Labor, Licensing & Regulation v. Muddiman*, 120 Md. App. 725, 734, 708 A.2d 47, 52 (1998)). We must determine whether an agency's legal conclusions are correct. *Hranicka v. Chesapeake Surgical, Ltd.*, 443 Md. 289, 297-298, 116 A.3d 507, 512 (2015) (quotations and citation omitted). It is for this reason that we review, without deference, the findings made below. *See Ireton v. Chambers*, 229 Md. App. 149, 155, 143 A.3d 215, 218 (2016) (citing *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142, 46 A.3d 443, 451 (2012)).

### d. The Plain Language of Corr. Servs. § 10-910(b)(6) is Mandatory.

It is presumed that all "[l]egislation is created with a particular objective or purpose." *Bowers v. State*, 227 Md. App. 310, 322 (2016) (citation omitted). As such, "[t]he cardinal rule of statutory construction is to effectuate and carry out legislative intent." *Duffy v. CBS Corp.*, 232 Md. App. 602, 612 (2017) (quoting *Rose v. Fox Pool Corp.*, 335 Md. 351, 359, 643 A.2d 906, 909 (1994)), *cert. granted*, No. 41, Sept. Term, 2017 (Md. Sept. 12, 2017). Therefore, courts assume that every statute is enacted to further some underlying goal or purpose and must be construed according to its general purposes and policies. *Rose v. Fox Pool Corp.*, 335 Md. 351, 358-59, 643 A.2d 906, 909 (citing *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987)).

17

When we are called upon to construe a statute, "we begin with the statutory language itself since the words of the statute, construed according to their ordinary and natural import, are the primary source and most persuasive evidence of legislative intent." *Duffy*, 232 Md. App. at 613, 161 A.3d at 7 (quoting *Rose*, 335 Md. at 359, 643 A.2d at 909 (citing *Comptroller of the Treasury v. Jameson*, 332 Md. 723, 732, 633 A.2d 93, 97-98 (1993))). "The statute must be construed as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Rose*, 335 Md. at 359, 643 A.2d at 909 (citing *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 758 (1993)).

*Morris v. Prince George's County*, 319 Md. 597, 603, 573 A.2d 1346, 1349 (1990), rationalized, however, that:

> our endeavor is always to seek out the legislative purpose, . . . we are not limited to [the] study of the statutory language. The plain meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention. The meaning of the plainest language is controlled by the context in which it appears. Thus, we always are free to look at the context within which statutory language appears. Even when the words of a statute carry a definite meaning, we are not precluded from consulting legislative history as part of the process of determining the legislative purpose or goal of the law.

(Internal citations and quotation marks omitted).

If a statute's language is ambiguous or seems to run counter to its statutory purpose, however, we may:

> search for [the General Assembly's intent] . . . , including the history of the [statute] or other relevant sources intrinsic and extrinsic to the legislative process[,] in light of: (1) the structure of the statute; (2) how [the statute] relates to other laws; (3) the statute's 'general purpose; and (4) [the] relative rationality and legal effect of various competing constructions.

18

*Hailes v. State*, 442 Md. 488, 495-96, 113 A.3d 608, 612 (2015) (internal quotation marks omitted). With these principles in mind, we perceive no need to consider the legislative history of Corr. Servs. § 10-910(b)(6) because its plain meaning is clear that an appointing authority is obliged to conform to (b)(6)(i) through (iv).

We begin by considering the phrase "[w]ithin 30 days after *receipt* of the recommendations of the hearing board" in Corr. Servs. § 10-910(b)(1) (emphasis added). The proper application of this provision determines whether the 30-day clock for the Commissioner to act began to run after the Hearing Board rendered its decision (16 November 2015),[15] or when Commissioner Wolfe acknowledged receipt of the Hearing Board's recommendation (23 November 2015). Apparently, the circuit court assumed the former when it found that "the penalty increase hearing was rescheduled for [17 December 2015], *outside of the statutory time frame*." (emphasis added). We disagree. The explicit focus of the statute is the date on which Commissioner Wolfe acknowledged receipt of the Hearing Board's decision.

As explained earlier, cases interpreting the LEOBR are persuasive when analyzing the provisions of the COBR. The LEOBR was the model for the COBR, e.g., the two bear a strong resemblance. Md. Code (2003, 2011 Repl. Vol.) § 3-108(d)(1) of the Public Safety Article (Pub. Safety) states that "[w]ithin 30 days after receipt of the recommendations of the hearing board, the chief shall . . . ." Corr. Servs. § 10-910(b)(1)

---

[15] The decision was rendered Friday, 13 November 2015. The disciplinary action would not take effect, however, until 16 November 2015, the following business day.

19

states that "[w]ithin 30 days after receipt of the recommendations of the hearing board, the appointing authority shall . . . ."[16] The only difference is the substitution of the words "appointing authority" in Corr. Servs. § 10-910(b)(1).

The Court of Appeals confirmed in *Popkin v. Gindlesperger*, 426 Md. 1, 5, 43 A.3d 347, 350 (2012), that the head of a law enforcement agency generally has the ultimate authority to sanction an officer under Pub. Safety § 3-108(d)(3). Further, in *Maryland-National Capital Park & Planning Comm'n v. Anderson*, 164 Md. App. 540, 576, 884 A.2d 157, 178 (2005), we recounted the 30-day time requirement of Pub. Safety § 3-108(d) in an illustration of the statute's operation upon a hearing board's finding of guilt as to charges. We noted "[u]nder [Pub. Safety] § 3-108(d)(1)(ii), upon a finding of guilt and suggested discipline by the Board, *the matter is then forwarded to the chief for review*, and the chief is required to 'issue a final order.'" *Id.* (citing Pub. Safety §§ 3-108 (d)(1)(i), (ii)) (emphasis added). The chief will then have 30 days to issue his/her order. We find *Popkin's* and *Anderson's* LEOBR rationales persuasive in construing and applying Corr. Servs. § 10-910(b)(1).

"[T]he plain meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention. The meaning of the plainest language is controlled by the context in which it appears." *Morris*, 319 Md. at 603, 573 A.2d at 1349 (1990). Pub. Safety § 3-108(d) follows the "**review by chief and final order**" in-text heading evincing that Pub.

---

[16] Black's law dictionary defines "receipt" as "The act of receiving something, esp. by taking physical possession <my receipt of the document was delayed by two days> . . . ." BLACKS LAW DICTIONARY 1382 (10th ed. 2014).

Safety § 3-108(d) grants the authority to the chief to issue a final decision. (emphasis in original). Thus, it falls to the chief to "review the findings, conclusions, and recommendations of the hearing board" and "issue a final order" within "30 days after receipt of the recommendations of the hearing board." Corr. Servs. §§ 10-910(b)(1)(i), (ii). The subject of the sentence, i.e., the appointing authority, in Corr. Servs. § 10-910(b)(1), follows the prefatory statement that the appointing authority has 30 days after acknowledging receipt of the hearing board's recommendation to render its decision, which would be the final agency action.

It is not logical to conclude, from the plain language of Corr. Servs. § 10-910(b), that the 30 days should begin to run when the hearing board renders its decision. Ordinarily, the hearing board's written recommendation as to punishment may not be binding upon the chief or appointing authority. *Popkin*, 426 Md. at 5, 43 A.3d at 350 (2012); *see Anderson*, 164 Md. App. at 576, 884 A.2d at 178 (citing a handwritten notation made at the time of the second reading of S.B. 1026 (the predecessor to the LEOBR), on 26 March 1977 noting, "the written recommendations [of the hearing board] are not binding upon the Chief. Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing board and then he shall issue his final order."). The statutory scheme offers the putative agency decision-maker final say as to an officer or correctional officer's punishment, if that authority acts timely and in accordance with the prescribed steps. These tasks must be satisfied within 30 days after acknowledgment of receipt of the Hearing Board's

21

recommendation, unless the correctional officer agrees to an extension of time, i.e., a waiver.

To conclude that the plain meaning of Corr. Servs. § 10-910(b)(1) was that the 30-day period commenced when the Hearing Board rendered its decision would insert, moreover, a phantom meaning to an otherwise evident and forthright statutory intent. It would result in a diminished 30-day window for the ultimate decision-maker to assess the merits of the recommended punishment and render its final judgment. The statute declines to concern itself with the modality of delivery of the Hearing Board's decision to the appointing authority. We conclude that the plain meaning of Corr. Servs. § 10-910(b)(1) provides the appointing authority 30 days to render a final order, commencing when it acknowledges receipt of the Hearing Board's recommendation. Here, Commissioner Wolfe acknowledged receipt of the Hearing Board's proposed punishment on 23 November 2015. Thus, the 30-day window for satisfying the recorded increased penalty meeting requirement and rendering a final penalty decision expired on 23 December 2015.

Next, we consider the merits of the parties' contentions regarding whether the terms of Corr. Servs. § 10-910(b)(6) are mandatory in nature or may be satisfied by substantial compliance. Appellant contends that subsection (b)(6) compels the appointing authority to comply with each statutorily-mandated step. Appellees, on the other hand, aver that substantial compliance, or compliance with the "letter and spirit of the statute," can be sufficient.

We are obliged to agree with Appellant. Courts should neither add words nor delete words from a clear and unambiguous statute in order to give it a meaning not reflected by the language the Legislature chose to use. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001). Thus, we must consider the written words in conjunction with the context in which they appear in the statute. Corr. Servs. §§ 10-910(b)(1), (b)(4), and (b)(5) all contain "shall," followed by specific statutory directions.[17] The use of "shall" is key: "[O]rdinarily, the word 'shall,' unless the context within which it is used indicates otherwise, is mandatory when used in a statute, and thus denotes an imperative obligation inconsistent with the idea of discretion." *Bright v. Unsatisfied Claim and Judgment Fund Board*, 275 Md. 165, 169, 338 A.2d 248, 251 (1975).

As noted, three of the six subsections in Corr. Servs. § 10-910(b) relating to the duties of the appointing authority employ "shall." The use of this important word in the subsection (b)(1) list, coupled with a semicolon followed by "and," indicates that the General Assembly meant that the subsection (b)(6) list set-out a mandatory regimen. Looking also to the prefatory language of the LEOBR, "[t]he chief may increase the recommended penalty of the hearing board only if the chief personally . . . ." Pub. Safety § 3-108 (d)(1)(i). The prefatory language of Corr. Servs. § 10-910(b)(6) states, by the same

---

[17] (b)(1) Within 30 days after receipt of the recommendations of the hearing board, the appointing authority *shall* . . . (4) The appointing authority *shall* consider the correctional officer's past job performance and the relation of the contemplated disciplinary action to any prior disciplinary action before imposing a penalty . . . (5) Before terminating a correctional officer under this subsection, the appointing authority *shall* obtain approval from the Secretary. (emphasis added).

23

token, "the appointing authority may increase the recommended penalty of the hearing board if the appointing authority . . . ." Even in the absence of a corresponding use of "only" and "personally" in Corr. Servs. § 10-910(b)(6),  we find persuasive nonetheless the mandatory nature of Pub. Safety § 3-108(d)(1), similar to our reasoning in *Hird v. City of Salisbury*, 121 Md. App. 496, 503, 710 A.2d 352, 356 (1998) (finding that the plain language of LEOBR § 731(c)[18] calls upon the chief to take enumerated steps, including meeting with the officer, before increasing the recommended penalty.).

A plain reading indicates that the appointing authority must comply with (b)(6)(i), (ii), (iii), *and* (iv) before it may increase a hearing board's proposed penalty.  This conclusion is congruent with the purpose of the statute[19] and compels mandatory compliance within the statutorily-prescribed time or a valid extension of that time.

For example, in *Dep't of Juvenile Services v. Miley*, 178 Md. App. 99, 105-06, 940 A.2d 1137, 1141 (2008), and *Ford v. Dep't of Pub. Safety & Corr. Services*, 149 Md. App. 488, 497, 817 A.2d 264, 270 (2003), we found compliance mandatory for the steps promulgated in Md. Code (1993, 2015 Repl. Vol.), § 11-106(a) of the State Personnel & Pensions Article (SPP).[20]  This section outlines compulsory pre-disciplinary procedural

---

[18] MD. Code, Art. 27, § 731  is the predecessor to Pub. Safety § 3-108(b).
[19] "The purpose of this subtitle is to establish exclusive procedures for the investigation and discipline of a correctional officer for alleged misconduct." Corr. Servs. § 10-902(a).
[20] (a) Before taking any disciplinary action related to [state] employee misconduct, an appointing authority shall:
    (1) investigate the alleged misconduct;
    (2) meet with the employee;
    (3) consider any mitigating circumstances;

steps an appointing authority must take before punishing a general state employee not covered by a different statutory process. It provides a limitation on the ability of an appointing authority to impose a disciplinary action by prefacing any action with five mandatory features.

Even if substantial compliance was a viable defense, we disagree with Appellees that the Commissioner's efforts would constitute substantial conformance, or satisfy the "letter and spirit" of the statute. If we were to recognize some sort of electrical equipment malfunction exception to Corr. Servs. § 10-910(b)(6)(ii) to excuse the shortcomings in Commissioner Wolfe's actions, we would be adding effectively words to an unambiguous statute. If an exception is to be countenanced, it is up to the General Assembly to adopt such.

We hold that Corr. Servs. § 10-910(b)(6) mandates that, before an appointing authority may impose a heightened disciplinary action, it must preface that action with the completion of four mandatory steps. The one at issue here is "allowing the correctional officer to be heard *on the record*." Corr. Servs. § 10-910(b)(6)(ii) (emphasis added).[21]

---

(4) determine the appropriate disciplinary action, if any, to be imposed; and
(5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.
Md. Code (1993, 2015 Repl. Vol.), § 11-106(a) of the State Personnel & Pensions Article.

[21] Although not briefed or argued here, it may be that Commissioner Wolfe violated also Corr. Servs. §10-910(b)(6)(iii) if he did not disclose or provide to Appellant a copy of his 10 December 2015 memorandum to Secretary Moyer before Foy's termination was announced. As noted *supra*, it was suggested at oral argument before this Court that Appellant was not made aware of this memorandum until after he filed his judicial review action.

When a statute specifies a "condition precedent for action authorized to be taken by an agency, the agency action may not validly be taken until that condition has been met." *Fraternal Order of Police, Montgomery County Lodge No. 35 v. Mehrling*, 343 Md. 155, 177, 680 A.2d 1052, 1063 (1996) (citing *Pyle v. Brooks*, 31 Or. App. 479, 570 P.2d 990 (1997)). If an appointing authority fails to follow Corr. Servs. § 10-910(b)(6) (without receiving a waiver under Corr. Servs. § 10-904(d)), then it closes effectively the window of opportunity for increasing the penalty. *VanDevander v. Voorhaar*, 136 Md. App. 621, 632, 767 A.2d 339, 345 (2001) (concluding, based on its interpretation of the LEOBR, that an appointing authority's failure to place on the record all information that should have been there closes the window of opportunity for enhancing an officer's penalty.).[22]

---

If that is so, moreover, it may well be that Commissioner Wolfe failed also to comply with Corr. Servs. § 10-910(b)(6)(iv), i.e., state on the record the substantial evidence on which he relied to support the increase of the recommended penalty.

[22] The Dissent notes at 5 that *VanDevander* "does not support [the Majority's] conclusion that the recording failure in this case in incurable." Nowhere in the Majority opinion did we say the failure was "incurable." It would have been curable had Commissioner Wolfe held the remedial penalty increase meeting on the date agreed upon (17 December 2015) or any other date within the statutorily-mandated time limit (through 23 December 2015). Moreover, requesting a waiver from Foy to have the meeting held outside the mandated time limit could have had a curative effect. Corr. Servs. § 10-910(b)(6) lays expressly the burden on Commissioner Wolfe to follow the necessary steps before he may increase Foy's penalty.

Furthermore, the Dissent at 6 notes, "there was [but] a single technical failure to fully comply with the requirements of [Corr Servs. §] 10-910(b)(6)(ii)." Not so; this was but one failure at compliance by the Commissioner. There were others. The statutorily-created burden rests with the Commissioner to offer the penalty increase hearing to Foy within the statutorily-mandated timeframe. Commissioner Wolfe canceled, on 16 December 2015, the 17 December 2015 remedial meeting, without explanation. He made no attempt to reschedule the meeting before December 23, due to his misinterpretation of when the 30 days in which to act lapsed. Finally, he neglected to ask Foy to waive the time

26

Although precedential guidance regarding appointing authority shortcomings in a COBR setting are not abundant, we find *Hird v. City of Salisbury* and *VanDevander v. Voorhaar* instructive.

In *Hird*, after a hearing board recommended a law enforcement officer's punishment on 24 April 1996, the chief (in compliance with what is now Pub. Safety § 3-108 (d)(5)(i) and (iii)) composed a letter on 20 May 1996 to the officer indicating that he was increasing her penalty. *Hird*, 121 Md. App. at 499, 710 A.2d at 354. On 23 May 1996, the chief met with the officer and read to her the letter, which was the first time she heard of the penalty increase. *Id.* The officer filed a petition for judicial review on 20 June 1996. *Id.* A motion to dismiss was granted on the basis that the officer's petition was untimely as it was filed 31 days after the chief increased the hearing board's penalty on 20 May 1996. *Hird*, 121 Md. App. at 501, 710 A.2d at 355. We disagreed, finding that the chief's decision to increase the penalty was final on 23 May 1996, and thus the judicial review action was filed within the 30-day window. *Hird*, 121 Md. App. at 504, 710 A.2d at 356.

We noted:

> Until [the chief] satisfied every pre-condition for increasing the hearing
> board's recommended penalty for [the officer], including meeting with her

---

within which to hold the meeting. It is not Foy's duty to schedule his own meeting, nor is it something Foy has control over.

Finally, the Dissent at 7 states that the Majority reaches a "rigid outcome." The COBR contemplates alleviating any apparent rigidity through its waiver provision. This provision allows the appointing authority to request an employee to waive certain protected rights so as to allow satisfactory statutory compliance. Thus, the COBR granted Commissioner Wolfe flexibility to comply with its requirements, even under his misguided view of when the 30-day window to increase Foy's punishment expired.

27

and giving her the opportunity to be heard on the record, his action in increasing the penalty was not validly taken and could not be final. Clearly, as of [20 May 1996], there was something additional and indeed essential for [the chief] to do to finalize his decision to increase the penalty to be imposed against [the officer]. Only after [the chief's 23 May 1996] meeting with [the officer] had taken place did there exist a validly taken action and order that left nothing further for the agency to do.

*Hird*, 121 Md. App. at 504, 710 A.2d at 356 (quotation marks omitted).

Although the appellate issue here is different from that in *Hird*, *Hird's* underlying rationale remains apt. The chief in *Hird* failed to satisfy what is now Pub. Safety § 3-108(d)(5)(ii), by failing to meet with the officer and allow her to be heard on the record. Commissioner Wolfe failed equally. Although the Commissioner met initially with Appellant in compliance with Corr. Servs. § 10-910(b)(6)(ii), his efforts failed to comply with the requirement that the meeting be on the record. There was something additional, and indeed essential, for Commissioner Wolfe to do before finalizing a decision to increase Foy's penalty.

Appellees argue that "*Hird* did not address a situation where the appointing authority fully complied with the law and took the actions required by statute . . . but the transcript of that meeting became unavailable due to a recording equipment malfunction." To the contrary, Commissioner Wolfe failed to comply with the law.

Appellees argue also that Commissioner Wolfe's memorandum to Secretary Moyer setting forth his recollection of what transpired at the unrecorded penalty increase meeting and his efforts to reschedule another meeting to a date within the statutory period constitutes substantial compliance with Corr. Servs. § 10-910(b)(6). If substantial

compliance were an available defense, we would disagree with this contention. Moreover, we observe that Commissioner Wolfe's actions were not as forthright as Appellees claim.

In our view, Commissioner Wolfe's actions occupy the same church, if not the same pew, as the sheriff's conduct in *VanDevander*. In *VanDevander*, the hearing board recommended punishment of a deputy, but the sheriff increased the penalty. *VanDevander*, 136 Md. App. at 627, 767 A.2d at 343. The deputy appealed the increased penalty. *Id.* The circuit court remanded the action for the sheriff to remedy an initial failure to comply with the third requirement of what is now Pub. Safety § 3-108(d)(5)(iii). *VanDevander*, 136 Md. App. at 624, 767 A.2d at 341. We found that relief to be erroneous; the sheriff acted outside the constraints of the mandatory requirements of Pub. Safety § 3-108(d)(5). *Id.* The sheriff:

> [e]ssentially ignored [Pub. Safety § 3-108(d)(5)] requirements as he enhanced the hearing board's recommended penalty . . . , [the sheriff failed] to review the hearing board's findings in a timely fashion, within the thirty-day window prescribed by statute . . . , [the sheriff] *neither asked [the deputy] to concur in postponing the mandated meeting nor requested that he waive the time limits set forth in [Pub. Safety § 3-108(d)(1)] . . .*, and [the sheriff] failed to disclose and provide to [the deputy] in writing at least ten days prior to the meeting any oral or written communication not included in the hearing board record on which the decision to consider increasing the penalty is based.

*VanDevander*, 136 Md. App. at 628-32, 767 A.2d at 343-45 (emphasis added and quotation marks omitted). We held that "the passing of time and the [s]heriff's failure to place on the record all information [mandated] closed the window . . . for enhancing [the deputy's] penalty . . . [Thus, the] penalty enhancements were instated outside the clear boundaries of the law and cannot stand." *VanDevander*, 136 Md. App. at 632, 767 A.2d at 345.

29

Although perhaps Commissioner Wolfe's actions do not suggest the same level of willfulness exhibited by the sheriff's conduct in *VanDevander*, we view nevertheless the Commissioner's conduct as troubling. As we concluded earlier, the 30-day period in Corr. Servs. § 10-910(b)(1) for Commissioner Wolfe to act began to run when he acknowledged receipt of the Hearing Board's recommendation on 23 November 2015. Appellant and Commissioner Wolfe agreed to have a remedial penalty increase meeting on 17 December 2015, well within the 30-day time limit. The Commissioner canceled unilaterally on 16 December 2015 the meeting, however. No reason was given for the cancellation nor any attempt made by Commissioner Wolfe to reschedule the penalty increase meeting before the expiration of the 30-day period on 23 December 2015.[23]

As in *VanDevander*, the appointing authority neglected to request the employee to waive his Corr. Servs. § 10-910(b)(1) 30-day right, and agree to have the requisite recorded penalty increase meeting take place beyond the 30-day window. Appellees argued before this Court at oral argument that, because of a scheduling conflict between Appellant's counsel and Commissioner Wolfe, they were unable to find a mutually available date on which to reschedule the penalty increase meeting. We are unmoved by this uncorroborated contention, especially in view of Appellee's incorrect view of when the 30-day window expired.

---

[23] Appellant's counsel stated, in an affidavit dated 23 May 2016, that on 16 December 2015, Commissioner Wolfe canceled the rescheduled penalty increase hearing and "[he] received no further correspondence from [] Commissioner [Wolfe] in regard to the meeting."

Commissioner Wolfe knew (or should have known) of the COBR's waiver provision, and could have requested Appellant to waive his right to a have the remedial meeting within the 30-day period. Instead, Commissioner Wolfe wrote a December 10 memorandum summary of his version of what transpired at the unrecorded 9 December 2015 penalty increase meeting, which memorandum (as the circuit court found) was neither objective nor complete on its face. Just as in *VanDevander* where the sheriff failed to notify the deputy regarding any objection he may have to the postponement, it appears that Commissioner Wolfe failed equally to notify timely Foy or his counsel of the existence of his written memorandum to Secretary Moyer. Commissioner Wolfe gave Foy no chance to object timely to anything contained in (or omitted from) the memorandum.

Appellees assert that Appellant has not disputed on appeal the accuracy or scope of the statements in the memorandum. We do not expect Appellant to object to the contents of something he did not know existed until it was too late to remonstrate effectively. The unilateral, one-sided memorandum is inadequate to comply (strictly or substantially) with the "on the record" requirement of Corr. Servs. § 10-910(b)(6)(ii).

Thus, Commissioner Wolfe's action was not taken validly when he increased the Hearing Board's proposed punishment. It cannot stand. Foy's rights were violated under the COBR. Failure to comply timely with the requirements of Corr. Servs. § 10-910(b)(6) closed the window of opportunity for the appointing authority to increase Foy's penalty beyond that proposed by the Hearing Board. Safeguards have been placed in the statute (such as the waiver provision of Corr. Servs. § 10-904(d)) to avoid cases like this from

31

arising. The circuit court erred in remanding this case for another opportunity for a penalty increase meeting. We reverse the circuit court's judgment as to its remedy. The Hearing Board's proposed penalty becomes, by default, the sanction applicable to Foy in this matter. *See* State Gov't § 10-222(h)(3)(ii) (granting us the ability to "reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision . . . (ii) exceeds the statutory authority or jurisdiction of the final decision maker"); *VanDevander*, 136, Md. App. at 632, 767 A.2d at 345 ("Even if the hearing board's findings of fact and law had been correct, appellant should suffer, at most, only that penalty suggested by the [hearing] board."); *Hird*, 131 Md. App. at 503-4, 710 A.2d at 356.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO REINSTATE THE HEARING BOARD'S PENALTY AND AWARD COMMENSURATE BACK-PAY CONSISTENT WITH THE BOARD'S SANCTION. COSTS TO BE PAID BY APPELLEES.**

32

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  1472

September Term, 2016

_____

MICHAEL FOY

v.

BALTIMORE CITY DETENTION CENTER

_____

Eyler, Deborah S.,
Leahy,
Glenn T. Harrell, Jr.,
     (Senior Judge, Specially Assigned),

JJ.
_____

Dissent by Eyler, Deborah S., J.
_____

Filed:  December 4, 2017

I respectfully dissent from the well-crafted Majority opinion. In my view, the unfortunate failure of the tape recorder during a meeting that everyone in attendance thought was being recorded can be cured by a remand for a new meeting with a working tape recorder. Foy should not escape termination as the penalty for disciplinary offenses including use of excessive force against an inmate because a tape recorder malfunctioned. For that reason, I would affirm the judgment of the circuit court.

The numerous disciplinary charges against Foy arose out of an incident in which he stepped on an inmate's neck, pinning him to the ground, and then filed a false report about what had happened. The charges recommended termination. A Hearing Board was convened and issued its report on November 16, 2015, finding Foy guilty of ten of twelve charges and recommending as a penalty that he be transferred to Central Booking and demoted.

The Commissioner received the Hearing Board's report on November 23, 2015, and decided to pursue an increase in the penalty to termination. To that end, on December 9, 2015, he held a meeting with Foy and his lawyer. The meeting was tape recorded, or so everyone thought. Sometime after the meeting concluded, the Commissioner discovered that the tape recorder had malfunctioned. The next day, December 10, 2015, the Commissioner informed Foy's attorney of the malfunction and sought another date on which to hold a meeting with functional recording equipment. Between the two men, there was no available date before December 16. They scheduled a new meeting for December 17.

Also on December 10, 2015, the Commissioner wrote a memorandum to the Secretary of the Department of Public Safety and Correctional Services ("Secretary"), detailing what had happened at the December 9 meeting.[1] The memorandum related the recording problem that later was discovered and the attempt to schedule a second meeting.

According to Foy's lawyer, the December 17, 2015 meeting was cancelled on December 16, with no explanation. It is important to note, however, that the parties to this case (and later the circuit court) were operating under the assumption that the 30-day period for issuing a final decision, in Md. Code (1999, 2008 Repl. Vol., 2015 Cumm. Supp.), section 10-910(b)(1) of the Correctional Services Article ("Corr. Servs."), began to run on November 16, 2015, when the Hearing Board issued its report, not on November 23, 2015, when the Commissioner received it. Indeed, that is the position the parties take to this day, as their briefs make clear.[2] So, the parties thought the 30-day period would expire on December 16, 2015 (or, as Foy's lawyer states in his brief, that December 17, 2015, was "the 31st day"). Foy's lawyer acknowledges (as it turns out incorrectly) that a meeting on

---

[1] Specifically, the Commissioner related that he had informed Foy at the meeting that he had reviewed the decision of the Hearing Board and the entire record and proceedings before that board; that he had elected to pursue an increase in the penalty to termination; that he was providing Foy the opportunity to present any arguments as to why the penalty should not be increased; that he and Foy's counsel had discussed his reviewing recorded documents and a possible settlement; and that Foy had offered reasons why the penalty should not be increased to termination.

[2] This is not entirely surprising, as language in this Court's opinion in *VanDevander v. Voorhaar*, 136 Md. App. 621, 630 (2001), strongly suggests that under the same "receipt of" language in the Law Enforcement Officers' Bill of Rights as it then existed the triggering day is the day the Hearing Board issues its report. ("The hearing board's report came forth on November 12, 1998. Sheriff Voorhaar's first hearing on that report was scheduled for December 22—ten days, we note, past the [30 day] statutory deadline.")

2

December 17 would have been beyond the 30-day time period. In all likelihood, the Commissioner cancelled the December 17, 2015 meeting because, like everyone else, he thought it would be beyond the 30-day deadline for issuing a final decision.

On December 16, 2015, the Commissioner issued his final order, by means of a letter addressed to Foy, explaining that he was increasing the penalty to termination and the basis for that decision. The final order thus was issued within 30 days of November 16, 2015 (the day everyone thought was the 30th day) and, more importantly, within 30 days of November 23, 2016 (the day that, as the Majority explains, and as I agree, in fact was the 30th day).

The only provision of the Correctional Officers' Bill of Rights ("COBR") governing review by the appointing authority of a hearing board's recommendations is Corr. Servs. section 10-910(b). The 30-day time period at the crux of this case is set forth at subsection (b)(1):

> Within 30 days after receipt of the recommendations of the hearing board, the appointing authority shall: (i) review the findings, conclusions, and recommendations of the hearing board; and (ii) issue a final order.

Subsection (b)(5) requires the appointing authority to obtain the approval of the Secretary before terminating a correctional officer under this subsection. And subsection (b)(6) sets out the steps that must be taken for an increase in the recommended penalty:

> With the approval of the Secretary, the appointing authority may increase the recommended penalty of the hearing board if the appointing authority:
> (i)     reviews the entire record of the proceedings of the hearing board;
> (ii)    meets with the correctional officer and allows the correctional officer to be heard *on the record*;
> (iii)   at least 10 days before the meeting, discloses and provides in writing to the correctional officer any oral or written communication not

3

> included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based; and
>
> (iv)   states on the record the substantial evidence on which the appointing authority relied to support the increase of the recommended penalty.

(Emphasis added.)  Subsection (b)(6) does not expressly state that those steps all must be taken within 30 days of the appointing authority's receipt of the Hearing Board's decision.

The issue in this case only concerns the meeting required by subsection (b)(6)(ii), specifically that it was held but not recorded.  I agree with the Majority that the Commissioner's written summary of the meeting did not comply with, or substantially comply with, the requirement that the meeting be "on the record."  I depart from the Majority with respect to the consequence of the Commissioner's having held a meeting, but not a meeting "on the record," before issuing his timely final decision.

As the Majority acknowledges, *Hird v. City of Salisbury*, 121 Md. App. 496 (1998), is not on point.  The issue there was whether an officer whose penalty for a disciplinary finding under the Law Enforcement Officers' Bill of Rights ("LEOBR") had been increased timely filed her petition for judicial review in the circuit court, under Rule 7-203.  As pertinent, that rule required (and still does) the petition for judicial review to be filed "within 30 days after . . . the date of the order or action of which review is sought[.]"  The police chief wrote a letter to the officer stating that he was increasing her penalty, but did not give it to her.  Three days later he met with her, read the letter out loud, and handed it to her.  She filed her petition for judicial review 30 days after the latter of those two days.  The question was whether the 30-day deadline in Rule 7-203 began to run on the day the chief wrote the letter, or the day he met with the officer and presented the letter to her.

At that time, the LEOBR stated:

*Before the chief may increase the recommended penalty of the hearing board, the chief personally shall* (1) Review the entire record of the hearing board proceeding; (2) Meet with the law enforcement officer and permit [her] to be heard on the record; (3) Disclose and provide the officer in writing at least 10 days prior to the meeting any oral or written communication not included in the hearing board record on which the decision to consider increasing the penalty is based; and (4) State on the record the substantial evidence relied on to support the increase of the recommended penalty.

Art. 27, § 731(c) (emphasis added). We held that the action the officer was challenging was completed on the day the chief met with the officer, which was one of the steps he was required to take "before" he could increase her penalty, not three days earlier when he prepared his letter but had not yet met with the officer. Therefore the petition was timely filed. There was no contention in *Hird* that the police chief had not acted timely, and therefore no issue about the consequence of an appointing authority not acting timely.[3]

*VanDevander v. Voorhaar*, 136 Md. App. 621 (2001), also an LEOBR case, is more on point, but does not support the conclusion that the recording failure in this case is incurable. There, the sheriff increased to termination the hearing board's recommended penalty for a deputy. In an action for judicial review, the deputy complained that the sheriff had done so without complying with the step of notifying him of communications, under section 731(c)(3). The circuit court agreed, and remanded the case "for further proceedings intended to cure the fatal defect in the existing order." *Id.* at 631. The sheriff reconsidered

---

[3] In *Hird*, there is no indication that the chief's meeting with the officer was recorded, despite the requirement that the officer be "heard on the record."

and reiterated his prior decision. In a second action for judicial review, the circuit court upheld the termination.

This Court reversed. We observed that "[a]s *Hird* requires, the [circuit] court remanded the [first] action [for judicial review] to give Sheriff Voorhaar [an] opportunity to cure the shortcoming [*i.e.*, the disclosure failure.]" *Id*. at 629. We concluded, however, that the sheriff had "essentially ignored" *all* the steps that were required before increasing a recommended penalty, not just one step. *Id*. Therefore, he

> could not have cured the defects under the LEOBR that the court below failed to recognize *or were otherwise beyond repair*. Instead, the passing of time and the Sheriff's failure to place on the record all information that should have been there closed the window of opportunity for enhancing [the deputy's] penalty.

*Id*. at 631–32 (emphasis added).

Thus, we recognized in *VanDevander* that there can be a failure by the appointing authority to comply with a step required to increase the recommended penalty that is curable after the final decision has been made. Sheriff Voorhaar's multiple failures were not curable, because they were tantamount to disregarding all the procedural requirements for increasing the penalty. In the case at bar, by contrast, there was a single, technical failure to fully comply with the requirements of Corr. Servs. section 10-910(b)(6)(ii) that can be easily cured simply by remanding the matter to the Commissioner to hold another meeting with Foy with a properly operating tape recorder. I do not read *Hird* or *VanDevander* to preclude such a remand, and in fact read *VanDevander* as permitting it.

The Majority holds, however, that once the 30-day time frame for making a final decision has passed, any failure to comply with a step required to increase the

6

recommended penalty cannot be cured, and the increased penalty is invalid. The cases the Majority cites that would support such a rigid outcome, such as *Dep't of Social Services v. Miley*, 178 Md. App. 99 (2008), concern Md. Code (1993, 2015 Repl. Vol.), section 11-106 of the State Personnel and Pensions Article ("SPP"), which specifies, at subsection (a), the steps an appointing authority must take "[b]efore taking any disciplinary action related to employee misconduct," and then imposes, at subsection (b), a "[t]ime limit" for taking any disciplinary action:

> [With an exception not relevant] an appointing authority may impose any disciplinary action no later than 30 days after the appointing authority acquires knowledge of the misconduct for which the disciplinary action is imposed.

In *Miley*, we held that because the appointing authority did not comply with the required step of giving the employee written notice of the disciplinary action within 30 days of his acquiring knowledge of the employee's misconduct, the disciplinary action was invalid. In doing so, we relied upon *Western Corr. Inst. v. Geiger*, 371 Md. 125 (2002), in which the Court of Appeals held that disciplinary actions against employees had to be dismissed because the discipline had not been imposed within 30 days of the appointing authority's having acquired knowledge of the misconduct. *Id.* at 151 (observing that SPP section 11-106(b) "is an unambiguously mandatory time requirement in which discipline must be imposed"). In the course of so holding, the Court interpreted SPP section 11-106 as giving "the appointing authority 30 days to conduct an investigation, meet with the employee the investigation identifies as culpable, consider any mitigating circumstances,

7

and determine the appropriate action and give notice to the employee of the disciplinary action taken." *Id.* at 144–45 (footnote omitted).

In my view, *Geiger* and its progeny do not compel the conclusion that, under the COBR, a failure to comply with a requirement to increase the penalty that is technical and capable of being cured cannot be cured after the appointing authority has issued his or her final order. Subsection (b)(1) of Corr. Servs. section 10-910 sets a clear 30-day deadline for issuing a final decision, but subsection (b)(6) does not include temporal language so as to make clear that compliance with a requirement for increasing the penalty can never take place by cure, after the final decision has been issued. Indeed, in the face of stricter language in the LEOBR ("Before the chief may increase the recommended penalty of the hearing board, the chief personally shall . . . ."), we made plain in *VanDevander* that some failures to comply can be cured after the final order has been issued.

To be sure, the recording failure in this case could have been cured before the Commissioner issued his final order. That was not an impossibility. Unfortunately, the parties misunderstood (and still misunderstand) that December 16, 2015, was not the last day for the Commissioner to issue that order. Nevertheless, the COBR does not prohibit the Commissioner from taking action to cure the recording failure post-final decision, even if it could have been cured before. Especially given the technical nature of the failure here and the lack of any prejudice to Foy beyond the absence of a recording, this case should be remanded for a new meeting that is properly recorded.

8